Chris A. NICHOLSON,

v.

**UNITED TECHNOLOGIES CORP., et al.**

v.

**Wilhelm R. YUNGK, et al.**

**Civ. No. H–86–1355 (PCD).**

United States District Court, D. Connecticut.

Oct. 11, 1988.

Paul M. Clyons, Norman Ebenstein, Gary R. Gold, A. Patrick Alcarez, Ebenstein & Ebenstein, P.C., Hartford, Conn., for Nicholson.

James Moher, Jack G. Steifelfest, Howard, Kohn, Sprague & Fitzgerald, Hartford, Conn., for United Technologies Corp.

James H. Throwe, East Hartford, Conn., for Chet Goralski.

Glenn T. Davis, Somers, Conn., for Donald Nordell.

Leslie C. Storm, Berman & Sable, Hartford, Patrick Boatman, Glastonbury, for Giovanni Lenoci.

William L. Ankerman, West Hartford, Conn., for Wilhelm Yungk.

Wendy L. Rome, Trial Atty., U.S. Dept. of Justice, Civil Div., Torts Branch, Aviation & Admiralty Section, Washington, D.C., for U.S.

## RULING ON PENDING MOTIONS

DORSEY, District Judge.

*Facts and Procedural History*

On January 6, 1985, plaintiff and the four individual third-party defendants were repairing the landing gear of a CH–54B helicopter. The landing gear was manufactured by defendant/third-party plaintiff United Technologies Corporation ("UTC"). Plaintiff and third-party defendants were federal civil service technicians employed at the Army Aviation Support Facility in Windsor Locks, Connecticut. The nose

landing gear allegedly exploded causing injury to plaintiff. Suit was commenced in Superior Court on August 5, 1985, alleging liability under Conn.Gen.Stat. § 52–572m, claiming negligence, breach of warranty, strict liability, and failure to warn. UTC impleaded the third-party defendants alleging that, if it was liable, third-party defendants, as the active tort-feasors were obliged to indemnify it. Third-party defendants removed the action to this court on October 8, 1986. On November 24, 1986, UTC added a fifth third-party defendant—the United States.

I. Defendant/Third–Party Plaintiff's Motion for Summary Judgment

UTC now moves that summary judgment be entered in its favor as to each count for the following reasons:

1. The claims are barred by the applicable statute of limitations (ninth affirmative defense).

2. There are no facts in dispute as to the lack of any design defect in the forward landing gear strut.

3. Plaintiff's injury was not proximately caused by any defect in the strut.

4. The doctrines of product misuse and knowing use of a product in a dangerous condition bar plaintiff's claims (first, fifth and sixth affirmative defenses).

5. The government contractor defense bars plaintiff's recovery as to any failure to warn (second and third affirmative defenses).

UTC also seeks partial summary judgment on its eighth affirmative defense claiming a right to set-off any compensation paid by the federal government pursuant to § 52–572r in the event the joint motion for summary judgment of the third-party defendants is granted as to the United States.

A. *Statute of Limitations*

■ Plaintiff has invoked Connecticut's Product Liability Act, Conn.Gen.Stat. § 52–572m, *et seq.* The statute of limitations applicable to such claims, § 52–577a, provides:

(a) No product liability claim as defined in section 52–572m shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c), (d) and (e), no such action may be brought against any party … later than ten years from the date that the party last parted with possession or control of the product.

. . . .

(c) The ten-year limitation provided for in subsection (a) shall not apply to any product liability claim brought by a claimant who is not entitled to compensation under Chapter 568, provided the claimant can prove that the harm occurred during the useful safe life of the product.

UTC argues that, since the strut in question was designed and sold by it more than ten years prior to August 5, 1985, plaintiff's claims are barred under § 52–577a(a). Plaintiff counters arguing that UTC last had possession or control of the product between May and October 1982 for extensive repairs after the helicopter suffered tornado damage. Thus, they claim that they had "possession or control" of the product well within the ten year limitation period.

Evidence of a single service call and a courtesy safety check was held insufficient to establish a genuine issue of material fact as to "possession or control" under § 52–577a(a). *Daily v. New Britain Machine Co.,* 200 Conn. 562, 512 A.2d 893 (1986).

Here, plaintiff has adduced sufficient facts to defeat summary judgment. Plaintiff's supporting documentation outlines the extent and degree of defendant's possession and repair of the helicopter. Contracts required UTC to inspect and repair the helicopter, including the landing gear mechanisms. *See* Plaintiff's Material Facts Not in Dispute at ¶ 1; Exhibit B. Further, UTC sought permission to return the helicopter before completion of all the repairs. *Id.* These facts are undisputed and create

at least an issue of fact as to the extent of UTC's possession and control of the helicopter.

Plaintiff also argues that whether or not his injury occurred within its useful safe life is a question of fact for the trier of fact. Conn.Gen.Stat. § 52–577a(c). Plaintiff has alleged that he was not and is not entitled to compensation under the Connecticut Workers' Compensation Act; Chapter 568, Conn.Gen.Stat. § 31–275, *et seq. See* Plaintiff's Material Facts Not in Dispute at ¶ 2; Plaintiff's Affidavit, Exhibit A. Thus, the products liability action would not be time-barred if the product was within its useful safe life at the time of the injury. As this also presents a material question of fact, summary judgment is inappropriate. *See Habenicht v. Sturm, Ruger & Co.,* 660 F.Supp. 52, 56 (D.Conn. 1986); *Kelley v. The Goodyear Tire & Rubber Co.,* 700 F.Supp. 91 (D.Conn.1987), Ruling on Motion for Summary Judgment at 8. Accordingly, UTC's motion for summary judgment is denied based on the statute of limitations.

### B. *Design Defect*

■ UTC claims that plaintiff has produced no admissible expert testimony to suggest a design defect in the forward landing gear strut and thus there is no material question of fact as to the claim of a defect in the strut. Summary judgment is inappropriate if plaintiff has adduced evidence which substantiates the necessary elements of his claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining the existence of a genuine issue, all ambiguities must be resolved and all reasonable inferences drawn in favor of the non-moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). Material questions of fact exist as to the defective design of the forward landing gear strut. Plaintiff's expert, Robert Norton, in his deposition of March 30, 1988, testified that the landing gear strut was defective because it failed to prevent or minimize clogging of the schraeder valve, resulting in captured pressure in the chamber which led to the explosion causing plaintiff's injury. *See* Deposition of Norton at 39–40, 89. Mr. Norton's opinion was based on the accident reports, the maintenance manual, and technical drawings. *Id.* at 41–42. From this it could be found that the strut design was defective. Trial will be necessary to resolve that issue.

■ UTC argues that Mr. Norton's opinion should not be considered because in his deposition he disclaimed the defect for which he was disclosed as a supportive expert. Plaintiff disclosed that Mr. Norton's opinion was "[t]hat the location and design of the air filler/vent valve ... is such as to be subject to clogging and it need not have been so, if properly designed." Plaintiff's Supplemental Discovery Response at 1. The isolated excerpts provided by UTC do not require a finding that Mr. Norton disclaimed the vent valve defect about which he was to testify. Mr. Norton did testify that the schraeder valve was defectively designed in that it was subject to clogging. This opinion is consistent with plaintiff's disclosure of expert testimony. Although portions of Mr. Norton's depositions may discredit his opinion, his credibility is to be decided by the trier of fact and not on a motion for summary judgment. Since issues of fact exist on plaintiff's design defect claims, UTC's motion for summary judgment is denied.

### C. *Proximate Cause*

UTC first claims that there is no evidence that any defect in the design of the vent valve actually contributed to plaintiff's injuries. Second, it argues that the condition of the valve was known to plaintiff and his co-workers, whose intervening conduct actually caused the injury.

■ Plaintiff has offered evidence suggesting that a defect in the vent valve led to the explosion which caused his injuries. In determining whether a genuine issue has been raised, a court must draw all reasonable inferences against the moving party. *Donahue,* 834 F.2d at 57. Plaintiff's expert, Robert Norton, has testified

that his opinion was that the vent valve was defectively designed in that it was subject to clogging. He went on to state that "the valve was clogged by some debris during the bleeding process, thus leaving captured air pressure in the chamber which led to the explosion of the one that was drilled out." Deposition of Norton at 89. Plaintiff, in his affidavit, states that he was positioned in the path of the explosion and suffered extensive injuries as a result. Affidavit of Nicholson at ¶ 8. Assuming these allegations by plaintiff are factually correct for purposes of this motion, plaintiff's showing defeats UTC's claim that no evidence exists to show plaintiff's injury was proximately caused by any defect in the strut. A jury could find, based on Norton's testimony, that because the clogging occurred in the course of bleeding, the design was susceptible to causing the clogging and thus defective.

 UTC also argues that plaintiff and his co-workers knew of the condition of the valve and their intervening conduct actually caused plaintiff's injury. It claims that the decision of plaintiff and his co-workers to drill the pins out of the strut, in the course of which the explosion occurred, cannot be said to have been reasonably anticipated as a course of action to be used to rectify the clogged condition. Further, it alleges that the CH–54B manual does not specify a procedure for drilling the pins out of the restricting cap of the nose landing gear strut and that such action was unreasonable. Affidavit of Rosario Rossi at ¶¶ 4, 5.

Plaintiff's affidavit asserts that neither he nor his co-workers had any idea the strut was still pressurized when they attempted to disassemble it. Affidavit of Nicholson at ¶¶ 6, 7. He claims that the vent valve was loosened, he heard pressure escape, and the strut collapsed. *Id.* This evidence contradicts UTC's allegations that plaintiff and his co-workers were aware that dangerous residual pressure remained in the strut.

Further, plaintiff's expert testified that the decision to drill out the pins in the strut was not unreasonable under the circumstances. Deposition of Norton at 2–28 to 2–29. He assumed that the service personnel were not aware of residual pressure in the strut, they were having difficulty in removing the pins to disassemble the strut and the maintenance manual contained no warnings of the danger in drilling out the pins. *Id.* That evidence counters UTC's allegations and demonstrates an issue of fact as to the likelihood and reasonableness of the actions of plaintiff and his co-workers and whether those actions were an intervening superceding cause of plaintiff's injuries. For the foregoing reasons, summary judgment is inappropriate and UTC's motion is denied.

### D. *Product Misuse*

 On the same facts, UTC also claims that drilling out the pins constitutes product misuse and bars plaintiff's recovery.

Product misuse and knowing use of a product in a dangerous condition may bar products liability claims. Conn.Gen.Stat. § 52–572*l.* Product misuse has been defined as the use of a product in a manner not reasonably foreseeable to the defendant, knowingly using a product in a defective condition and including actual knowledge of a dangerous condition. *Norrie v. Heil Co.*, 203 Conn. 594, 600–02, 525 A.2d 1332 (1987); *see also Kelly v. Deere & Co.*, 627 F.Supp. 564, 565 (D.Conn.1986).

As discussed above, there is evidence which supports the reasonableness of the decision to drill the pins out of the strut and which supports a finding that he and his co-workers had no knowledge that dangerous pressurization remained in the strut. Thus, issues of fact exist as to product misuse and plaintiff's knowledge of any defective condition and, therefore, summary judgment is denied on this defense.

### E. *Government Contractor Defense*

UTC claims the government contractor defense in UTC's second and third affirmative defenses bars plaintiff's claims. Plaintiff alleges that UTC was under a duty to provide instructions and warnings concerning dangers in repairing or disassembling

the nose landing gear strut, which they assert was defectively designed. *See* Complaint, First Count, ¶ 8(i-k); Plaintiff's Material Facts Not in Dispute, ¶ 5; Exhibit D.

In *Boyle v. UTC*, —— U.S. ——, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the Court held that "liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States." *Id.* 108 S.Ct. at 2518. The Court found that a state-imposed duty of care as an asserted basis for a contractor's liability was in direct conflict with the duty imposed by the government contract and thus state tort law must be displaced. *Id.*

The Supreme Court in *Boyle* did not consider whether a failure to warn claim may be barred by the government contract defense. Product liability suits generally involve claims based on either a theory of defective manufacturing, defective design, or failure to warn. *Ramey v. Martin–Baker Aircraft Co.*, 656 F.Supp. 984, 999 (D.Md.1987). The government contractor defense does not shield government contractors from liability for manufacturing defects, i.e., the manufacturer did not comply with the government's design specifications. *McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 448 n. 6 (9th Cir.1983); *Foster v. Day & Zimmerman, Inc.*, 502 F.2d 867 (8th Cir.1974). Further, the Supreme Court has specifically stated that the government contractors defense insulates government contractors from liability in design defect cases. *Boyle*, 108 S.Ct. at 2518.

Neither party has extensively addressed the issue of whether the defense will bar a duty to warn claim beyond the conclusory assertions that it does or does not apply. It seems that the answer depends on how the failure to warn claim is asserted and the analysis used. *Ramey*, 656 F.Supp. at

999. In some cases, duty to warn claims merely repeat design defects. *See Koutsoubos v. Boeing Vertol*, 553 F.Supp. 340, 344 (E.D.Pa.1982), *aff'd*, 755 F.2d 352 (3d Cir.1985) (plaintiff's claim that defendant failed to warn of dangers associated with the improperly designed aircraft found to be repetitive of assertions concerning design defects). Duty to warn claims can also be viewed as a type of design defect under the theory that warnings in general are safety components of the product.[1] *Ramey*, 656 F.Supp. at 999.

Plaintiff asserts a failure to provide adequate warnings and instructions concerning repair and disassembly of the forward landing gear strut in the CH–54B maintenance manual and not any independent duty to warn. *See* Deposition of Norton at 2–25 to 2–28; 2–51; Plaintiff's Material Facts Not in Dispute at ¶ 5; Exhibit D. UTC seeks immunity under the government contractor defense because it claims the government controlled the contents of the CH–54B manual. *See* UTC's Memorandum in Support at 18.

In order to decide whether the government contractor defense applies to the duty to warn claims at issue, it is necessary to discuss the policy behind the defense as set out in *Boyle* and determine if it applies equally as well in this setting. The government contractor defense grew out of the historic principle of sovereign immunity. When a contractor acts under the authority and control of the United States, it shares in the immunity enjoyed by the government. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940). The defense promotes the federal interest in military procurement and protects the government officers in making military judgments about the design of equipment. *Boyle*, 108 S.Ct. at 2517–18.

When the government provides or approves specifications of a product which calls for some safeguards but not others, the government contractor is not under a duty to provide every known safety device

---

1. *But see McKay,* 704 F.2d at 453 (separated design defect claims from duty to warn claims and only applied government contract defense to former without explanation); *Johnston v. United States,* 568 F.Supp. 351, 359 (D.Kan. 1983) (same).

**604**

where it is not called for by the government contract. *See Id.* 108 S.Ct. at 2518; *Ramey,* 656 F.Supp. at 999. The choice is that of the government. The contractor is obliged to the government's decision. The same is undoubtedly true if the government provides "reasonably precise" specifications for the contents of a maintenance manual. A contractor should not be held liable for deficiencies in the contents of a maintenance manual if the contents are dictated by the government.

■ Liability for failure to warn as asserted in this case would have the same negative effects on military procurement as was outlined in *Boyle,* 108 S.Ct. at 2515. Further, the government's decision on the contents of a maintenance manual involves the same balancing of technical, military and even social considerations protected in *Boyle. Id.* 108 S.Ct. at 2517.

Because the policy justifications underlying the government contractor defense apply equally well regardless of whether the action is based on an allegedly dangerous design defect or a failure to provide adequate warnings and instructions, the government contractor defense can function as an affirmative defense against both claims.[2] *See Bynum v. FMC Corp.,* 770 F.2d 556, 574 & n. 24 (5th Cir.1985); *Ramey,* 656 F.Supp. at 1000. The first two elements of the government contractor defense require UTC to show that it acted pursuant to and in conformity with "reasonably precise" specifications established or approved by the government concerning the contents of the CH–54B maintenance manual. Under Fed.R.Civ.P. 56(c), the party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553.

In support of its motion, UTC has provided a summary of the government's involvement in compiling and amending the CH–54B manual. *See* Defendant's Memorandum in Support at 18 and supporting documentation. This evidence establishes the following undisputed material facts.

UTC undertook no action with respect to the CH–54B manuals other than that under contract with the government and in conformity with government specifications. Affidavit of Howard Carpenter at ¶¶ 5, 6. The government maintained control over the contents of the manual and made revisions to the contents without the consultation or knowledge of UTC. *Id.* at ¶¶ 7, 8. Further, in connection with revisions made pursuant to government contract, government personnel, including users of the manual, contributed the majority of expertise into the proposed changes to the manual. *Id.* at ¶¶ 9, 10.

In addition to showing the government provided it with specifications, UTC must show that such specifications were "reasonably precise." *Boyle,* 108 S.Ct. at 2518. UTC has appended the contract and specifications under which it acted in revising the CH–54B Manual. *See* Defendant's Statement of Material Facts Not in Dispute at ¶¶ 15, 16 and supporting documentation. The specifications outline the requested changes to the manual and then identify each specific page requiring change. *Id.* The specifications also refer to government furnished data which is used in developing the manuals. Lastly, such revisions were subject to government review and approval. UTC has thus adequately demonstrated that the government provided reason-

---

2. By motion to strike dated June 30, 1986, plaintiff moved to strike defendant's second and third affirmative defenses asserting the government contractor defense. Plaintiff challenged the defense as legally insufficient under Connecticut law.

The Supreme Court has recognized that the government contractor defense applies to state law claims as a matter of federal common law. *Boyle,* 108 S.Ct. at 2513–14; *see, e.g., Clearfield*

*Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 574–75, 87 L.Ed. 838 (1942). Further, a motion to strike should not be used to test the merits of a defense when factual and legal issues remain to be decided. *In re All Maine Asbestos Litigation,* 575 F.Supp. 1375, 1377 (D.Me.1983). Thus, plaintiff's motion to strike the second and third affirmative defenses is denied.

ably detailed specifications for the contents of the maintenance manual.

The last requirement of the government contractor defense is that the supplier have warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States. *Boyle,* 108 S.Ct. at 2518. UTC has come forward with evidence that it was aware of no hazard posed by the landing gear strut when the maintenance manual was drafted, nor did it subsequently become aware of any scientific knowledge supporting the existence of a hazard. *See* Defendant's Material Facts in Dispute at ¶ 19; Affidavit of Peruzzi at ¶ 4. On the other hand, plaintiff has come forward with no evidence that UTC knew or should have known about a defect and thus should have warned the government. *See, e.g., Boyle v. U.T.C.,* 792 F.2d 413, 415 (4th Cir.1986); *Bynum,* 770 F.2d at 577. Accordingly, plaintiff has not discharged his summary judgment burden and UTC is entitled to judgment as a matter of law as to plaintiff's failure to warn claims under the government contractor defense.

F. *Applicability of Conn.Gen.Stat. § 52–572r*

▆▆▆ UTC argues that it is entitled to set off any compensation received by plaintiff under the Federal Employee's Compensation Act ("FECA"), 5 U.S.C. §§ 8101–8151, against any judgment rendered against it. It argues that, if the United States is treated as a private employer under Connecticut law for purposes of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* and thus accorded immunity from UTC's third-party action, *see* Section IIA *infra,* then the court should apply the entire Connecticut Workers' Compensation Act to the case.

Section 52–572r(b) provides that any verdict or settlement against a third-party, here UTC, shall be reduced by any amounts paid to plaintiff as compensation under the provisions of Chapter 568, Connecticut Workers' Compensation Act. It is undisputed that plaintiff has received compensation only under FECA, rather than under the Connecticut Act and consequently the set off is not directly applicable to this case.

UTC argues that it is inconsistent and inequitable to look to Connecticut law in determining immunity under FTCA and not to apply that same law to the issue of a set off. UTC brought its action for indemnification against the United States pursuant to FTCA, 28 U.S.C. §§ 1346(b), 2674. FTCA mandates the application, by way of analogy, of state substantive law only to determine whether a right of action would exist under "like circumstances." *General Elec. Co. v. United States,* 813 F.2d 1273, 1275 & n. 1 (4th Cir.1987). Once that determination is made and the United States is held immune from suit, state substantive law is irrelevant to the relationship between the United States and its employee under FECA. Further, the fact that the United States can recover payments made to the injured employee under FECA, 5 U.S.C. § 8132, should the employer recover from a third-party, does not prevent the United States from establishing immunity under FTCA. *See, e.g., Insurance Co. of North America v. United States,* 643 F.Supp. 465, 468–69 (M.D.Ga.1986). Further, to allow the offset would conflict with the reimbursement for FECA payments to which the United States is entitled. 5 U.S.C. §§ 8131, 8132.

For the foregoing reasons, UTC's motion for summary judgment on this issue is denied.[3]

II. Third–Party Defendants' Joint Motion for Summary Judgment

A. *Indemnification Against the United States*

▆▆▆ UTC's claim against the United States for indemnification has been brought pursuant to the FTCA, 28 U.S.C.

---

**3.** By motion to strike dated June 30, 1986, plaintiff moved to strike defendant's seventh affirmative defense alleging a right to set off under § 52–572r. In light of the foregoing ruling denying defendant's motion for summary judgment and concluding that § 52–572r(b) is inapplicable to this case, plaintiff's motion to strike that defense is moot.

§§ 1346(b), 2671–2680. FTCA is a limited waiver of sovereign immunity which grants the district courts exclusive jurisdiction over suits for money damages against the United States for "personal injury ... caused by the negligent act or omission of any employee of the government while acting within the scope of his ... employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). It is undisputed that the accident which is the basis of plaintiff's claim occurred in Connecticut and, therefore, Connecticut law controls the liability of the United States for indemnity. Further FTCA "permits an indemnification action against the United states 'in the same manner and to the same extent' that the action would lie against 'a private individual under like circumstances.'" *Lockheed Aircraft Corp. v. United States,* 460 U.S. 190, 198, 103 S.Ct. 1033, 1038, 74 L.Ed.2d 911 (1982); 28 U.S.C. § 2674.[4]

Under Connecticut law an employer who complies with the Connecticut Workers' Compensation Act, § 31–275, *et seq.,* is immune from any damages actions brought by injured employees. Conn.Gen.Stat. § 31–284. This exclusivity provision extends to bar third party claims for indemnity as well.

The United States, as an employer, is not covered by the Connecticut Workers' Compensation Act. Rather, plaintiff in this case received benefits under FECA, 5 U.S. C. §§ 8101–8151. *See* Third–Party Defendant's Material Facts Not in Dispute at ¶ 4. Thus, the issue becomes whether a private employer, "under like circumstances," could be held liable for indemnification under Connecticut law. The term "under like circumstances" as found in 28 U.S.C. § 2674 has been construed to support an

analogy between the United States' compliance with FECA and a private employer's compliance with state compensation law. *See General Elec.,* 813 F.2d at 1275 & n. 1; *In re All Maine Asbestos Litigation,* 772 F.2d 1023, 1028 (1st Cir.1985).

■ This court finds that a private employer "under like circumstances" would be immune from liability arising from an employee's injuries where it secured compensation for its employee under the Connecticut Workers' Compensation Act. Similarly, the United States, by virtue of its compliance with FECA, is entitled to claim the same immunity. *See General Elec.,* 813 F.2d at 1276. "To hold otherwise would be to place the United States in a position less favorable than that of any private employer under the [Connecticut] statute." *Id. See also, Roelofs v. United States,* 501 F.2d 87, 92–93 (5th Cir.1974) (state workers' compensation system, including defenses available to covered employers, is the law applied to the United States under FTCA even though the government was not in actuality covered under the state compensation law). Accordingly, UTC's third-party claims are barred pursuant to 28 U.S.C. § 2674 and summary judgment is granted as to the United States.

B. *Indemnification Against the Individual Third–Party Defendants*

■ Defendant/third-party plaintiff, UTC, impleaded the individual third-party defendants (Chet Goralski, Giovanni Lenoci, Donald Nordell and Wilhelm Yungk), claiming indemnity under the active/passive liability formulation applicable under Connecticut law. *See* Objection of Defendant/Third–Party Plaintiff to Joint Motion for Summary Judgment at 2. UTC's sole theory is that any breach of duty on its part was passive or remote and the conduct of the individual third-party defendants on the day of the incident constituted the ac-

---

**4.** Defendants argue that *Lockheed,* 460 U.S. at 197–98, 103 S.Ct. at 1038–39, holds that nothing in either FTCA or FECA directly bars indemnity actions. While *Lockheed* is not a bar to such actions, neither is it an express waiver of immunity and right to sue on indemnity claims with respect to the United States. To establish a

right to indemnification, FTCA mandates the application of Connecticut's substantive law as it applies to private employers in like circumstances. Thus the court looks to the exclusivity provision of the Connecticut statute, rather than that of FECA. *See General Electric,* 813 F.2d at 1276 & n. 3.

tive negligence which caused plaintiff's injuries. Thus, UTC seeks reimbursement or indemnification from the third-party defendants for any liability to plaintiff.

In general, passive negligence is limited to constructive or technical fault, i.e., where an employer is held vicariously liable for the acts of an employee. *See Gomeau v. Forrest*, 176 Conn. 523, 528, 409 A.2d 1006 (1979); *In re General Dynamics Asbestos Cases*, 602 F.Supp. 497, 500–01 (D.Conn.1984). In this case, plaintiff's product liability claims allege defective design and failure to warn. Assuming arguendo that the conduct of the individual third-party defendants constitutes active negligence on their part, this does not establish that UTC was only passively negligent. At best, such allegations, if proven, would make them joint tortfeasors.

Plaintiff's complaint bases UTC's potential liability on its actions in designing the product at issue and on deficiencies in the maintenance manual. Its tort feasance is thus parallel to that alleged against the individual third-party defendants. Any liability of the individual third-party plaintiff's arises from their repair of the landing gear strut. It cannot be said that UTC's potential liability flows vicariously from acts of the third-party defendants, but rather, stems from its own acts or omissions. *See General Dynamics*, 602 F.Supp. at 501; *Esckelson v. R.L. Best*, Civil No. H–84–1003 (D.Conn. Oct. 29, 1986), Ruling on Motion to Strike at 3–4; *see also Weintraub v. Dahn*, 188 Conn. 570, 573, 452 A.2d 117 (1982). Accordingly, UTC's potential liability cannot be characterized as passive and is not transferable through indemnity. *See Mable v. Bass Transportation Co.*, 40 Conn.Sup. 253, 257–58, 490 A.2d 548 (Conn.Sup.1983), *aff'd*, 3 Conn. App. 547, 490 A.2d 538 (1985) (existence of an active/passive relationship needed to state cause of action in indemnity).

Further, the Connecticut Supreme Court in *Kyrtatas v. Stop & Shop, Inc.*, 205 Conn. 694, 535 A.2d 357 (1988), held that the Connecticut Products Liability Act, Conn.Gen.Stat. § 52–572m, *et seq.*, abrogated common law indemnification in products liability cases. The court ruled that an action based on active/passive indemnification did not apply in a statutory product liability action in which all potential defendants are parties to the suit, whether sued by plaintiff or impleaded by defendant. *Id.* at 702–03 & n. 2, 535 A.2d 357.

The court concluded that indemnification was inconsistent with the provisions of the product liability act establishing comparative responsibility and contribution. Conn. Gen.Stat. § 52–572o. Indemnification involves a claim for reimbursement in full from one primarily liable, while contribution involves reimbursement of a share of a payment made by claimant that was attributable to a joint-tortfeasor. *Kaplan v. Merberg Wrecking Corp.*, 152 Conn. 405, 412, 207 A.2d 732 (1965). Permitting an action for contribution eliminated the need for indemnification in product liability suits. *Kyrtatas*, 205 Conn. at 701, 535 A.2d 357.

Accordingly, UTC's claim for indemnification against the individual third-party defendants on the active/passive responsibility theory must fail and the third-party defendants' motion for summary judgment on this claim is granted.

### III. Motions for Sanctions

UTC moves for the entry of sanctions against plaintiff in the form of attorney fees, monetary fines, and preclusion of evidence at trial, based upon plaintiff's improper discovery responses and other pleadings, which are claimed to be inconsistent and in violation of this court's orders. Rule 37(b), Fed.R.Civ.P., allows a court, in its discretion, to impose appropriate sanctions when a party fails to obey an order compelling discovery.

Initially, UTC claims plaintiff failed to comply with aspects of this court's April 4, 1988 Order Re Motion to Compel. In that order, the court found that plaintiff's initial answers to Interrogatories 62 and 64 were unresponsive. Plaintiff's supplemental responses to these interrogatories are now "unknown" and "unknown at this time," respectively.

Although such answers are not very illuminating, it is permissible for an interrogated party to respond under oath as to his lack of knowledge. 10 Fed.Proc.L.ed., § 26:317 at 557. Plaintiff is now bound by his responses claiming no knowledge and any later attempt to assert claims or introduce evidence on the subject of the interrogatories at issue may be grounds for sanctions. Sanctions would be appropriate if it can be shown that such information was within plaintiff's knowledge when he supplemented his responses or that plaintiff was under a duty to supplement his responses under Fed.R.Civ.P. 26(e).

UTC also claims that plaintiff's April 20, 1988 supplemental response to discovery raises claims of inadequate testing and inspection and negligent repair for the first time. *See* Supplemental Responses to Interrogatories 56, 57 and 58. UTC argues that these claims are inconsistent with (1) plaintiff's November 23, 1987 disclosure of expert opinion which focused on design defect and failure to warn claims; and (2) plaintiff's December 3, 1987 response to motion to compel in which plaintiff stated his claims were not based upon testing, quality control, inspection, assembly, installation, or repair of the product.

Although these assertions may appear inconsistent, defendant points to no violation of any court order in connection therewith. The sanctions set out in Fed.R.Civ.P. 37(b) only come into operation upon the failure of a party to obey a court order compelling discovery. Thus, sanctions are not appropriate under these circumstances. However, this ruling in no way prejudices UTC from taking any steps as to these claims for purposes of discovery, clarification or protection.

Lastly, UTC argues that plaintiff's disclosure of a damages expert was in violation of the court's April 26, 1988 order granting plaintiff an extension of time to name additional experts. Defendant claims that plaintiff's request only spoke in terms of naming an expert to address issues raised in the deposition of his liability expert. The court's April 26, 1988 order is drafted in broad terms and in no way limits the type of expert plaintiff could name. Further, UTC has not shown that his damages expert was not retained to address issues raised in the prior deposition of the liability expert. In any event, UTC has not demonstrated that it was prejudiced in any way by the naming of this damages expert.

For the foregoing reasons, UTC's motion for sanctions is denied on all grounds.

*Conclusion*

1. Defendant/Third–Party Plaintiff's motion for summary judgment is granted as to plaintiff's failure to warn claims and denied on all other grounds.

2. Third–Party Defendant's Joint Motion for Summary Judgment is granted and all third-party claims are dismissed.

3. Defendant/Third–Party Plaintiff's Motion for Sanctions is denied on all grounds.

4. Plaintiff's Motion to Strike Defendant/Third–Party Plaintiff's Second and Third Affirmative Defenses is denied and is moot as to the seventh affirmative defense.

SO ORDERED.