William J. ROMANI, Plaintiff,

v.

CRAMER, INC., Defendant.

No. 96–30047–MAP.

United States District Court,
D. Massachusetts.

Jan. 26, 1998.

John B. Stewart, Bernard J. Romani, Moriarty, Donoghue & Leja, Springfield, MA, for William J. Romani.

Robert M. Mack, Morrison, Mahoney & Miller, Springfield, MA, F.J. McDonald, Lawrence E. Lafferty, Dona Feeney, Law Offices of F.J. McDonald, Boston, MA, Christopher S. Shank, Brenda G. Hamilton, Joel P. Fahnestock, Shank, Laue & Hamilton, P.C., Kansas City, MO, for Cramer, Inc.

Richard N. Blume, Law Offices of Maria K. Mendros, Boston, MA, for United Technologies Corp.

## ORDER

PONSOR, District Judge.

Upon *de novo* review, this Report and Recommendation is hereby adopted, and the Motion for Summary Judgment is ALLOWED. The Connecticut statute of repose applies; no adequate evidence supports plaintiff's contention that it has not been violated. So ordered.

## *REPORT AND RECOMMENDATION WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

*(Docket No. 31)*

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

This action concerns product liability, breach of warranty, negligence and strict liability claims asserted by William J. Romani ("Plaintiff") against Cramer, Inc. ("Defendant"). Plaintiff contends that on March 26, 1994, at his place of employment in Connecticut, the back support of his office chair failed, causing him to fall and injure his back. Plaintiff claims that Defendant, the manufacturer of the chair, was aware or should have been aware that the chair's barrel and spindle detention device was defective.

Defendant's motion for summary judgment, based on Connecticut's statute of repose, was referred to the court on July 10, 1997, for a report and recommendation pur-

suant to Rule 3 of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts. *See also* 28 U.S.C. § .636(b)(1)(B). After the matter was scheduled for hearing, the parties waived oral argument. For the reasons set forth below, the court recommends that Defendant's motion for summary judgment be allowed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994). The facts must be viewed in a light most favorable to the non-moving party. *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 7 F.3d 1047, 1050 (1st Cir.1993). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes*, 18 F.3d at 15 (discussing *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992).

## III. DISCUSSION

In its motion for summary judgment, Defendant raises Connecticut's statute of repose as an absolute bar to Plaintiff's claims. The Connecticut statute places a limit of ten years on a manufacturer's liability, running from the time a manufacturer parts with the product sued upon. Specifically, the statute provides that "no [product liability] action may be brought against any party ... later than ten years from the date that the party last parted with possession or control of the product." Conn.Gen.Stat. § 52–577a(a). The statute reflects the belief that products

should not be expected to last forever and that a product's useful life, for liability purposes, should appropriately expire at ten years. *Alves v. Siegel's Broadway Auto Parts, Inc.*, 710 F.Supp. 864, 868 (D.Mass. 1989). Defendant maintains that it is entitled to judgment as a matter of law because, by the time Plaintiff filed suit, more than ten years had passed since the chair left its control.

In response, Plaintiff first argues that it is more appropriate to apply Massachusetts law to this action because Massachusetts has a more significant interest in Plaintiff's claim than Connecticut. The application of Massachusetts law would inure to Plaintiff's benefit since, unlike Connecticut, Massachusetts does not have a statute of repose. *See Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 632 N.E.2d 832, 835 (1994). Alternatively, Plaintiff maintains that, even if the Connecticut statute of repose applies, there is a factual dispute as to when the chair left Defendant's control. The facts are described below and viewed in a light most favorable to Plaintiff.

### A. Choice of Law

■ A federal court with diversity jurisdiction must apply the substantive law of the forum state, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since statutes of repose are substantive in nature under federal law, the Court will look to the law of the forum, Massachusetts, in order to address the underlying choice of law question. *Arrieta–Gimenez v. Arrieta–Negron*, 859 F.2d 1033, 1036 (1st Cir.1988). Neither party disagrees with this first step.

The analysis next requires the court to determine whether, under Massachusetts' choice of law rules, Connecticut or Massachusetts law should apply in the instant matter. The choice is particularly important here because Connecticut's statute of repose creates a significant barrier to Plaintiff's suit. Massachusetts, on the other hand, has not imposed a statue of repose on product liability actions. *Cosme*, 632 N.E.2d at 835. Thus, if

Plaintiff is able to demonstrate that Massachusetts law applies, his claim would survive Defendant's motion for summary judgment. Historically, a court's choice of law boiled down to an initial determination of whether the relevant issue—in this case, a statute of repose—was substantive or procedural under Massachusetts law. *See Alves,* 710 F.Supp. at 865.

Although the district court in *Alves,* after analyzing the very statute of repose at issue here, concluded that Massachusetts courts would view the statute as substantive, and would therefore apply the law of Connecticut, *id.* at 868, the Supreme Judicial Court of Massachusetts, in a later decision, specifically declined to embrace that approach. *Cosme,* 632 N.E.2d at 834. Rather, recognizing that it had not yet determined whether statutes of repose were substantive or procedural, the Supreme Judicial Court instead adopted a "functional approach" to the choice of law question. *Id. See also New England Tel. & Tel. Co. v. Gourdeau Contr. Co., Inc.,* 419 Mass. 658, 647 N.E.2d 42, 43 (1995). A functional approach, the Supreme Judicial Court stated, requires a court to assess various " 'choice-influencing considerations' . . . including those provided in the Restatement (Second) of Conflict of Laws (1971) and those suggested by various commentators." *Cosme,* 632 N.E.2d at 834 (quoting *Bushkin*

*Assocs., Inc. v. Raytheon Co.,* 393 Mass. 622, 473 N.E.2d 662, 668 (1985)).

More specifically, the Supreme Judicial Court determined that a court, when implementing the functional approach in product liability actions, should consider the factors set forth in both sections 145 and 146 of the Restatement. *Cosme,* 632 N.E.2d at 834–35. Section 145 provides a general principle applicable to all issues in tort.[1] Section 146, on the other hand, provides principles applicable to personal injury causes of action.[2] In turn, the Supreme Judicial Court noted, "[b]oth sections require an examination of the relevant issue in accordance with the principles provided in § 6 of the Restatement." *Id.* at 835.[3] *See also Millipore Corp. v. Travelers Indem. Co.,* 115 F.3d 21, 30 (1st Cir.1997) ("Massachusetts courts take a flexible interest-based approach to conflict of laws issues and will consider a wide variety of factors in choosing the applicable law."); *Am. Management Servs., Inc. v. George S. May Int'l Co.,* 933 F.Supp. 64, 69 (D.Mass.1996) (Massachusetts "now employs an eclectic choice-of-law approach which cannot be reduced to a single, named, doctrine."). *Compare Alves,* 710 F.Supp. at 870 (describing the choice of law approach employed by Massachusetts as a hybrid between *lex loci delicti,* the place of injury, and Restatement factors); *Jeffrey M.*

1. Restatement (Second) of Conflict of Laws § 145 (1971), provides:

   (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
   (2) Contacts to be taken into account in applying the principles of § 6 include:
     (a) the place where the injury occurred,
     (b) the place where the conduct causing the injury occurred,
     (c) the domicile, residence, nationality, place of incorporation and place of business of the parties and
     (d) the place where the relationship, if any, between the parties is centered.
   These contracts are to be evaluated according to their relative importance with respect to the particular issue.

2. Restatement (Second) of Conflict of Laws § 146 (1971) provides:

   In an action for personal injury, the local law of the state where the injury occurred deter-

mines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

3. Restatement (Second) of Conflict of Laws § 6(2) (1971) provides, in applicable part:

   [T]he factors relevant to the choice of the applicable rule of law include
     (a) the needs of the interstate and international systems,
     (b) the relevant policies of the forum,
     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
     (d) the protection of justified expectations,
     (e) the basic policies underlying the particular field of law,
     (f) certainty, predictability and uniformity of result, and
     (g) ease in the determination and application of the law to be applied.

*Shaman, The Vicissitudes of Choice of Law: The Restatement (First, Second) and Interest Analysis,* 45 Buff.L.Rev. 329 (1997) (arguing for the abandonment of the Restatement in favor or a pure interest analysis).

Applying the various factors outlined in section 145 first, the court finds that Connecticut has the stronger interest both to the occurrence and the parties. The undisputed facts show that Plaintiff's injury occurred in Connecticut at his place of employment. Plaintiff's curious allegation to the contrary, that the injury occurred in both states (*see* Pl.'s Mem.Opp.Summ.J. at 6), is both incredible and unsupported by the record. In addition, Plaintiff sought medical treatment and physical therapy for his injury in Connecticut and his worker's compensation claim was paid through Connecticut's system.[4]

Moreover, Defendant is neither incorporated in Massachusetts nor does it have a registered agent or sales representative in Massachusetts. Rather, Defendant is a Kansas corporation with its principal place of business there. As a result, the conduct allegedly causing Plaintiff's injury, i.e., the negligent manufacture of the chair, could not have taken place in Massachusetts. Accordingly, the instant matter is profoundly different than *Cosme,* wherein Massachusetts was found to have the more significant relationship. In *Cosme,* in addition to the plaintiff's residency, the defendant's principal place of business and, accordingly, the state where the conduct causing the plaintiff's injury arose, was Massachusetts. Here, the only connection to Massachusetts is Plaintiff's residency.

A section 146 analysis is similarly illustrative of Connecticut's superior interest in Plaintiff's claim. Indeed, under section 146, the law of Connecticut, the "state where the injury occurred," presumptively applies unless Massachusetts is shown, pursuant to the guiding principles of section 6, to have a "more significant relationship" to both the parties and the incident. *See also Cosme,* 632 N.E.2d at 835. Applying those princi-

ples, it is clear that Massachusetts does not have the more significant relationship to this case.

With respect to the first section 6 factor, the needs of the interstate system, it cannot be gainsaid that "harmonious relations" between the states would not be adversely affected were one, Massachusetts, to allow liability which the other, Connecticut, would deny. *See Alves,* 710 F.Supp. at 871–72 (quoting Restatement § 6, comment d). Neither is "commercial intercourse" furthered by denying Connecticut the effect of a law which encourages the sale and exchange of products within its borders. *Id.*

The second and third considerations in section 6, the relevant policies of the forum and other states, also mandate the application of Connecticut's statute of repose. Connecticut enacted its statute to protect manufacturers from liability for products whose useful lives have expired. *Alves,* 710 F.Supp. at 871. By affording protection from stale claims, Connecticut allows and encourages manufacturers to freely sell products within its borders. *Cosme,* 632 N.E.2d at 835; *Alves,* 710 F.Supp. at 872. *See also Baxter v. Sturm, Ruger and Co., Inc.,* 230 Conn. 335, 644 A.2d 1297, 1301 (1994) ("[S]ome of the evidentiary problems that may arise in connection with trying cases involving older products include the fact that an older product is more likely to have undergone misuse or attention since manufacture, the possibility that a jury may inappropriately apply a standard reflecting subsequent technological developments when assessing liability, and the fact that witnesses' documents may be difficult to obtain.") Applying Massachusetts law in the instant matter would run directly counter to Connecticut's interest in achieving a uniform result for injuries caused by products used in Connecticut. Moreover, the application of Massachusetts law would infringe on Connecticut's economic interest, Connecticut having paid Plaintiff's worker's compensation claim.

---

4. Indeed, in light of its obligation to pay Plaintiff for injuries and medical expenses pursuant to Connecticut's Workers' Compensation Act, United Technologies Corporation/Hamilton Standard, Plaintiff's employer, intervened as a co-plaintiff seeking reimbursement from Defendant. (*See* Docket No. 19).

The remainder of the section 6 factors do not necessarily favor the application of either state's laws. The basic policies regarding product liability are reflected by the respective laws in both, the competing laws are easily determined and applied, and neither party seems to have planned its conduct with any legal consequences in mind. *Alves*, 710 F.Supp. at 872 (quoting § 6, comment i). In sum, while Massachusetts may have a generalized interest in protecting its citizens, that alone is insufficient to override Connecticut's superior interest on all other fronts. *Cf. Rice v. Dow Chem. Co.*, 124 Wash.2d 205, 875 P.2d 1213, 1219 (1994) ("[R]esidency in the forum states alone has not been considered a sufficient relation to the action to warrant application of forum law.") (citing Restatement (Second) § 145 cmt. e).

Interestingly enough, the district court in *Alves*, after undertaking the very section 6 analysis at play here, also held that Connecticut, the site of the injury, had the more significant relationship to the claim than did Massachusetts. The court so held despite the fact that the manufacturer was incorporated and had its principal place of business in Massachusetts and, more importantly, despite the fact that the defective product had been ordered from and sold in Massachusetts. In the instant case, in contrast, even these contacts do not exist between Defendant and Massachusetts. Again, the only real relationship to Massachusetts evident here is Plaintiff's residency. Standing alone, that relationship is insufficient to override Connecticut's interest and invoke the application of Massachusetts law.

### B. Application of Connecticut's Statute of Repose

Since Connecticut's statute of repose applies, the only question remaining is whether, at the time Plaintiff filed suit on March 25, 1996, ten years had passed since the chair was out of Defendant's control. In this regard, Defendant, through inspection of the chair, determined that the chair was manufactured and assembled prior to August 20, 1980, (Def.'s Mem.Summ.J. at Ex. 1, Wehner Aff. ¶¶ 6–7), which was significantly more than ten years before Plaintiff commenced suit. Defendant avows that, prior to August 20, 1980, it used a different manufacturing process with respect to the barrel and spindle assembly, as reflected in the chair at issue, than the automatic weld it has since employed. (Id.) Defendant further avows that it was customary for Defendant to manufacture its chairs to order and sell them shortly afterwards. (Id.) Defendant has relied on the method of manufacture to determine when the chair was sold because Defendant's sales documents, its alternative method of proof, were destroyed in a flood in 1980. Defendant also asserts that it never exerted any measure of control over the chair after its release. Defendant avers that it was never notified of the condition of the chair prior to Plaintiff's accident, that it never inspected the chair after the date of sale, and that none of its employees ever visited Plaintiff's employer at any time prior to Plaintiff's accident. (Wehner Aff. ¶ 8.)

In response, Plaintiff maintains that the chair was within Defendant's control during the statutory period. In support, Plaintiff, through his own affidavit, avows that the chair was still in its original packaging when his employer, Hamilton Standard, opened its new plant in 1990. Accordingly, Plaintiff hypothesizes, the chair had recently been within Defendant's control. (Pl.'s Mem. Opp.Summ.J. at 3.) Consequently, Plaintiff asserts, his claim should survive Defendant's motion for summary judgment because there is a genuine issue of material fact as to when Defendant last parted with the chair.

### C. Sufficiency of Evidence

A moving party is entitled to summary judgment "if the nonmoving party does not adduce enough evidence to permit a reasonable trier of fact to find for the nonmoving party on any element essential to its claim." *Milton v. Van Dorn Co.*, 961 F.2d 965, 969 (1st Cir.1992). "The party with the burden of proof must produce more than a 'scintilla of evidence' on each element essential to its claim, thus affording the jury a nonconjectural basis for concluding that 'the fact to be inferred [is] more probable than its nonexistence.'" *Id.* (quoting *Malave–Felix v. Volvo*

**80**

*Car Corp.*, 946 F.2d 967, 970–71 (1st Cir. 1991)).

To overcome the statutory bar imposed by Connecticut's statute of repose, Plaintiff would have the burden at trial to demonstrate that the chair was within Defendant's control within ten years of his filing suit. Yet, in response to Defendant's affirmative proffer at summary judgment regarding its lack of control within that time period, the record provided to date by Plaintiff, the nonmoving party, is devoid of any objective counter-evidence. The sole evidence offered by Plaintiff is his own assertion that in 1990, when he began working at a new building at his place of employment, "all of the chairs were new" and "[t]hey were all still in their unopened packaging when [he] first observed them at the plant." (Pl.'s Mem. Opp.Summ.J. at Ex. A ¶ 2.)

In the court's view, Plaintiff's statement, standing alone as it does, is insufficient to dispute Defendant's more objective evidence that the .chair was manufactured and released prior to August 20, 1980. The fact that the chair may have been newly used by *Plaintiff's employer* in 1990—which, by the way, was still ten years after its manufacture—does not raise a genuine issue of fact regarding its having been in *Defendant's* recent control. Indeed, Plaintiff himself concedes that "it is possible an intermediary could have paid for the chairs and then hoarded them until they could be sold to Hamilton Standard," although he rejects this possibility as unlikely. (Id. at 3) ("Businesspeople do not usually view office chairs as a commodity and postpone for a decade seeking a return on their investment.") "Similarly," Plaintiff argues, "it is unlikely that Hamilton Standard would have purchased a cache of chairs from an intermediary in 1980 for an undetermined need, and then warehoused them for ten years." (Id.)

As is obvious, Plaintiff's evidence is, at best, speculation upon speculation, requiring the Court to infer that the chair had been in Defendant's control when, in 1990, the chair was first unpacked for use by Plaintiff's employer at its new plant. As the First Circuit has noted, however, "[w]hile circumstantial evidence sometimes may be 'sufficient to leap the summary judgment ... hurdle,' there must be something more than a few weak inferences to create reasonable proof of a link between events so widely separated in time." *Lewis v. Gillette Co.*, 22 F.3d 22, 25 (1st Cir.1994) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir.1991)).

In this regard, the Court notes that, prior to filing his opposition to Defendant's motion for summary judgment, Plaintiff had sought and was granted leave to conduct additional discovery. (*See* Docket No. 38.) "Through further discovery of persons at Hamilton Standard," he asserted, "the plaintiff expects to elicit and obtain facts supporting the proposition the chairs were supplied in the late 1980's which would cast doubt on the defendant's assertion that the chairs must have been supplied no later than 1980." (Id.) Despite given the opportunity for further discovery, however, the only assertion actually made by Plaintiff when his opposition was actually filed concerned his own observations about the condition of the chairs when they were unpacked in 1990.

At bottom, the string of inferences which Plaintiff proposes is simply too weak to create a genuine issue of material fact. As this circuit's caselaw commands, "[t]he evidence illustrating a factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve...." *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). Plaintiff's claim that Defendant had more recent control of the chair, without any genuine supporting evidence, does not create enough of a factual dispute for his claim to survive summary judgment.

Plaintiff's remaining arguments are similarly unavailing. First, Plaintiff urges the court to adopt an adverse inference against Defendant due to the loss of its sales documents. In support, Plaintiff cites a case in which missing evidence was intentionally or knowingly destroyed. *Nation–Wide Check Corp., Inc. v. Forest Hills Distrib. Inc.*, 692 F.2d 214, 217 (1st Cir.1982). Since Plaintiff offers no evidence to suggest that

such was the case in the instant matter, the court is left to ponder how the flood in this case was deliberate.

Second, Plaintiff argues that Defendant "made no attempt to gather purchase and sale documentation regarding the chair in question from the plaintiff's employer." (Pl. Mem.Opp.Summ.J. at 2.) This assertion, however, does not appear to be accurate. Defendant issued interrogatories to Hamilton Standard, Plaintiff's employer, in an attempt to obtain any documentation relating to its acquisition or purchase of the chairs. (*See* Def. Reply (Docket No. 57), Exh. A at Doc. Req. No. 2.) In response, Hamilton Standard indicated that it had no such documents in its possession, although it would continue to search its records. (Id.)

Third and finally, Plaintiff contends that because Defendant has no sales records, merely "secondary evidence regarding the date [Defendant] parted with the chair in question," a rational fact finder should be given the opportunity to weigh the evidence. Granted, Defendant's evidence with respect to its release of the chair in 1980 is based primarily on an avowal of its usual business practices. As Defendant notes, however, Rule 56(a) requires only that a party's motion for summary judgment be accompanied by supporting affidavits, which Defendant has provided. Documentary evidence is not required. Coupled with its uncontradicted evidence concerning the date of manufacture, Defendant's avowed business practices provide sufficient evidence in support of its motion. Moreover, although given the opportunity, Plaintiff was evidently unable to obtain sufficient evidence challenging Defendant's avowed business practices, even though Plaintiff planned to conduct further discovery in the form of Rule 30(b)(6) depositions. (*See* Docket No. 38.)

In sum, Plaintiff's "factual" assertions in opposition are too weak to reach the "more than a mere scintilla" standard this circuit employs when reviewing summary judgment

claims against the party bearing the burden of proof at trial. *Milton,* 961 F.2d at 969. "Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact." *Horta v. Sullivan,* 4 F.3d at 8 (quoting *August v. Offices Unlimited, Inc.,* 981 F.2d 576, 580 (1st Cir. 1992)). Once Defendant, in support of its summary judgment motion, demonstrated that no genuine issue of material fact existed with respect to the manufacture and release of the chair, Plaintiff could only contradict that showing by pointing to *specific facts* demonstrating that there is, indeed, a trial-worthy issue. *See National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995). *Compare Nicholson v. United Technologies Corp.,* 697 F.Supp. 598, 600 (D.Conn.1988) (plaintiff adduced sufficient facts demonstrating defendant's control of the product within ten years to defeat summary judgment); *Daily v. New Britain Machine Co.,* 200 Conn. 562, 512 A.2d 893, 896–97 (1986) (upholding trial court's summary judgment for defendant when plaintiff failed to adduce sufficient facts demonstrating defendant's control of product in intervening ten years). No such facts have been adduced in the present matter. Rather, the objective evidence of record demonstrates that the chair was manufactured and shipped prior to August 20, 1980, nearly fourteen years before Plaintiff's injury and nearly sixteen years before this litigation commenced.

## IV. CONCLUSION

For the reasons stated, the Court recommends that Defendant's summary judgment motion be granted.[5]

Nov. 25, 1997.

---

**5.** The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations

must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recom-

mendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986);

*Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.