SOCRATES KYRTATAS ET AL. *v.*
STOP & SHOP, INC., ET AL.
(13164)

PETERS, C. J., HEALEY, SHEA, COVELLO and HULL, Js.

Argued November 6, 1987—decision released January 5, 1988

*James R. Hawkins,* with whom was *Edward V. O'Hanlan,* for the appellant (defendant Shield Packaging Company, Inc.).

*Kevin M. Tepas,* with whom was *Ann Marie W. Vetrosky,* for the appellee (named defendant).

SHEA, J. The dispositive issue in this appeal is whether common law indemnity principles based on the concept of active versus passive liability apply in the context of a statutory product liability action. We conclude that these principles do not apply in this area and find error. We set aside the judgment for the named defendant, Stop & Shop, Inc. (Stop & Shop), on its cross complaint for indemnification from the defendant Shield Packaging Company, Inc. (Shield Packaging), and remand the case to the trial court with direction to modify the judgment in accordance with the jury's findings concerning the comparative responsibility among the named plaintiff and the defendants.

The plaintiffs, Socrates Kyrtatas and his wife, Fillia Kyrtatas, brought this action as a result of injuries that Socrates suffered when an aerosol can of Stop & Shop window cleaner exploded and struck him in the face. Stop & Shop was the seller and distributor of this aerosol can. Shield Packaging designed the formula, and filled the can for Stop & Shop. The defendant Crown,

Cork & Seal Company, Inc. (Crown Cork), manufactured the can, which bore Stop & Shop's label. The plaintiffs brought suit under our product liability act; General Statutes §§ 52-572m through 52-572r; and alleged two basic theories of liability against each of the three defendants: (1) that the Stop & Shop aerosol window cleaner was defective and unreasonably dangerous because a chemical reaction between the can and its contents had caused the explosion, and because it had been sold without adequate warnings, instructions or safety precaution information; and (2) that the defendants had breached an implied warranty that the aerosol window cleaner was "adequately contained, packaged and labelled; fit for its ordinary purpose; and safe for use in a normal manner."

Each defendant denied the plaintiffs' allegations, and alleged in special defenses that Socrates Kyrtatas' own negligence in handling the aerosol can of Stop & Shop window cleaner had caused the explosion. Cross complaints were filed by the defendants Crown Cork and Stop & Shop against each other and against Shield Packaging, seeking indemnity for whatever damages the plaintiffs might recover. Shield Packaging filed a cross complaint seeking indemnity from Crown Cork. Counsel for the defendants agreed prior to trial to limit the grounds of their cross complaints to common law indemnity only; accordingly, no contractual indemnity claims were presented.

At the close of its instructions, the trial court provided the jury with a special verdict form, prepared by counsel and the court, on which to answer special interrogatories relating to the allegations of the complaint and cross complaints. The jury returned its verdict on the special verdict form. The jury found the defendants Stop & Shop and Shield Packaging, but not Crown

Cork, legally responsible for the plaintiffs' injuries, and assigned comparative responsibility as follows:

| | |
|---|---|
| Stop & Shop | 49 percent |
| Shield Packaging | 49 percent |
| Crown Cork | 0 percent |
| Socrates Kyrtatas | 2 percent |

The last three interrogatories of the special verdict form dealt with the defendants' cross complaints for indemnity. The jury found that Crown Cork was entitled to indemnity as against both Stop & Shop and Shield Packaging, that Stop & Shop was entitled to indemnity as against Shield Packaging, and that Shield Packaging was not entitled to indemnity from Crown Cork. The trial court rendered judgment in accordance with the verdict.

Shield Packaging has reached a settlement with the plaintiffs, and also with Crown Cork. The sole issue remaining is whether Shield Packaging must indemnify Stop & Shop for its liability under the judgment in the case.

Shield Packaging argues that common law indemnification is inapplicable in the context of a suit brought under our product liability act. General Statutes §§ 52-572m through 52-572r. We conclude that the legislature in enacting the act intended to abrogate common law indemnification in this area and replace it with a system of comparative responsibility.

"Ordinarily there is no right of indemnity or contribution between joint tort-feasors. *Caviote* v. *Shea,* 116 Conn. 569, 575, 165 A. 788 [1933]." *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 412, 207 A.2d 732 (1965). "Where, however, one of the defendants is in control of the situation and his negligence alone

is the direct immediate cause of the injury and the other defendant does not know of the fault, has no reason to anticipate it and may reasonably rely upon the former not to commit a wrong, it is only justice that the former should bear the burden of damages due to the injury." *Preferred Accident Ins. Co.* v. *Musante, Berman & Steinberg Co.,* 133 Conn. 536, 543, 52 A.2d 862 (1947). Under the circumstances described, we have distinguished between "active or primary negligence," and "passive or secondary negligence." *Kaplan* v. *Merberg Wrecking Corporation,* supra, 415. Indemnity shifts the impact of liability from passive joint tortfeasors to active ones. Id., 412–16.

A plaintiff in an action for indemnification not based on statute or express contract, who had been a codefendant in a prior action with a joint tortfeasor, can recover indemnity from that codefendant only by establishing four separate elements: (1) that the other tortfeasor was negligent; (2) that his negligence, rather than the plaintiff's, was the direct, immediate cause of the accident and injuries; (3) that he was in control of the situation to the exclusion of the plaintiff; and (4) that the plaintiff did not know of such negligence, had no reason to anticipate it, and could reasonably rely on the other tortfeasor not to be negligent. Id., 416.

Whether the doctrine of common law indemnification should apply in the context of suits brought under our product liability act is an issue of first impression in this court. The plaintiffs brought their action under this act, which was enacted in 1979. The legislative history of the act is silent concerning the effect of its passage upon the common law doctrine of indemnification.[1]

---

[1] A general discussion of the legislative history and provisions of our product liability act; General Statutes § 52-572m et seq.; appears in R. Yules, "An Analysis of Connecticut's New Product Liability Law," 56 Conn. B.J. 269 (1982). There is no indication in this article, or in the legislative history of the General Assembly, that the legislature considered the impact of this

This court, however, does not have to look further than the act for the legislative intent. "If the words of a statute are clear, the duty of a reviewing court is to apply the legislature's directive, since, where the wording is plain, courts will not speculate as to any supposed intention. The question before a court then is not what the legislature actually intended, but what intention it expressed by the words that it used. *P.X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 159, 454 A.2d 1258 (1983); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980)." *Duguay* v. *Hopkins,* 191 Conn. 222, 228, 464 A.2d 45 (1983). In determining the meaning of statutory language, this court must read a statute as a whole. *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985).

We conclude that the common law doctrine of indemnification is inconsistent with provisions of the product liability act concerning comparative responsibility, award of damages, and contribution under General Statutes § 52-572o. Subsection (b) of § 52-572o provides: "In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may makes its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibilty were disregarded, and (2) *the percentage of responsibility allocated to each party, including the claimant,* as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat

statute on the common law right of indemnification. The legislative history of No. 79-483 of the 1979 Public Acts may be found in: (1) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., pp. 552–61, 564–74, 578–79, 599–600, 602–608, 610; (2) 22 S. Proc., Pt. 14, 1979 Sess., pp. 4625–50; and (3) 22 H.R. Proc., Pt. 21, 1979 Sess., pp. 7280–7306.

two or more persons as a single party." (Emphasis added.) Subsection (c) of § 52-572o provides: "In determining the percentage of responsibility, the trier of fact *shall* consider, on a comparative basis, both the nature and quality of the conduct of the party." (Emphasis added.) Subsection (d) of § 52-572o requires that the trial court render a judgment based on the jury's findings of comparative responsibility: "The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party."

These three subsections cannot be reconciled with the common law doctrine of indemnification. Comparative responsibility is inconsistent with indemnification because the former allows a jury to assign liability in specific proportion among several defendants on the basis of the evidence presented while the latter doctrine arose in response to the common law prohibition against contribution, and applies only in situations in which a passive joint tortfeasor has no actual responsibility for a tort. Indemnification is also irreconcilable with the product liability act because the legislature in subsection (e) of § 52-572o has abolished the common law prohibition against contribution in the context of these suits: "If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of the claimant against him and commenced the action for contribution within one year after payment, or (2) agreed while

action was pending to discharge the common liability and, within one year after the agreement, have paid the liability and brought an action for contribution."

Contribution and indemnification are based on fundamentally different principles. "Parenthetically it perhaps should be pointed out that both an implied obligation to indemnify and contribution are based on equitable principles. *Lockwood* v. *Nagy Bros., Inc.,* 150 Conn. 691, 692, 186 A.2d 82 [1962]. But indemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest, while contribution involves a claim for reimbursement of a share of a payment necessarily made by the claimant which equitably should have been paid in part by others." *Kaplan* v. *Merberg Wrecking Corporation,* supra, 412. The product liability act by permitting actions for contribution has eliminated any reason for retaining the doctrine of indemnification in regard to this variety of suit.

The legislature, by mandating the employment of comparative responsibility principles and by allowing contribution in the context of product liability suits, has demonstrated its intent to abrogate the doctrine of common law indemnification in that area. Many jurisdictions have abolished common law indemnification rights when they have adopted a system of comparative negligence or responsibility, although none of their statutes is exactly the same as our product liability act. See *Loose* v. *Offshore Navigation, Inc.,* 670 F.2d 493, 499–502 (5th Cir. 1982); *Allison* v. *Shell Oil Co.,* 113 Ill. 2d 26, 495 N.E.2d 496 (1986); *Kennedy* v. *Sawyer,* 228 Kan. 439, 455–62, 618 P.2d 788 (1980); *Cox* v. *Cooper,* 510 S.W.2d 530, 536 (Ky. App. 1974); *Dole* v. *Dow Chemical Co.,* 30 N.Y.2d 143, 147–53, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972); *New Terminal Warehouse Corporation* v. *Wilson,* 589 S.W.2d 465, 468 (Tex. Civ. App. 1979); *Pachowitz* v. *Milwaukee & Suburban*

*Transport Corporation,* 56 Wis. 2d 383, 386–90, 202 N.W.2d 268 (1972).

Stop & Shop contends that the legislature intended to retain common law indemnification rights even where juries are obligated to find damages based on comparative responsibility. Stop & Shop relies on General Statutes § 52-572h (k), a provision that is not a part of our product liability act, which provides: "This section shall not impair any right to indemnity under existing law. Where one tortfeasor is entitled to indemnity from another, the right of the indemnitee is for indemnity and not contribution, and the indemnitor is not entitled to contribution from the indemnitee for any portion of his indemnity obligation." The "section" referred to is § 52-572h, our comparative negligence statute, which applies only to negligence actions under § 52-572h but not to suits under our product liability act.

It is significant that the legislature in the product liability act provides for contribution, but does not mention the possibility of indemnification. General Statutes § 52-572o (e). If the General Assembly had intended to retain common law indemnification principles in the context of product liability suits, it could have explicitly so stated, as it did in our comparative negligence statute. Courts may not " ' "read into clearly expressed legislation provisions which do not find expression in its words." ' " *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 81, 440 A.2d 792 (1981), quoting *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974).

We hold that the product liability act has abrogated common law indemnification principles in this area.[2]

---

[2] Our holding applies to situations in which all potential defendants are parties to the suit. In such a situation, a jury's findings concerning the relative responsibility of the parties are conclusive, and are entitled to res judicata status. On some occasions, a plaintiff may not sue all potential

These principles, however, may still be viable in other contexts. In view of our holding, we need not address Shield Packaging's claim that the jury's finding that it must indemnify Stop & Shop was contrary to law because Stop & Shop did not meet the four requirements under *Kaplan* v. *Merberg Wrecking Corporation,* supra, 412–16, for indemnification, and because that finding was inconsistent with the rest of the verdict. We note in addition that this decision does not address the question of under what circumstances a party may seek indemnification for liability imposed upon him in a product liability suit through either a statutory or express contractual claim.

There is error, the judgment for Stop & Shop on its cross complaint for indemnification from Shield Packaging is set aside, and the case is remanded to the trial court with direction to render judgment in accordance with the jury's findings concerning the comparative responsibility of the named plaintiff and the defendants.

In this opinion the other justices concurred.

defendants. A defendant may implead a third party who may be liable for all or part of the plaintiff's claim against him. Practice Book § 117. In this case we need not consider the effect of a jury's findings concerning comparative responsibility in a subsequent indemnification suit against a joint tortfeasor who had not been made a party in the suit in which the verdict and findings of the jury were rendered.