Angela Delores STEFANO, Executrix of the Estate of Anthony J. Stefano, deceased, and Angela Delores Stefano, individually, Plaintiff,

v.

Gerald SMITH, Robert B. Henley and Chrysler Corp., Defendants.

Civ. A. No. N–84–360 (RCZ).

United States District Court,
D. Connecticut.

Jan. 18, 1989.

Andrew D. Sabetta, Derby, Conn., for plaintiff.

Thomas A. Mulligan, Jr., McNamara and Kenney, Bridgeport, Conn., for Smith's Texaco Service.

Wesley W. Horton, Moller, Horton & Fineberg, P.C., Hartford, Conn., for Chrysler Corp.

Robert J. Gillooly, Gillooly, McGrail, Carroll & Sheedy, New Haven, Conn., for Robert Henley.

## RULING ON PENDING MOTIONS

ZAMPANO, Senior District Judge.

The above-entitled federal diversity action is one for wrongful death and loss of consortium based on claims of negligence and product liability. This action arises from a two-car accident which caused the death of plaintiff's decedent. Now pending before the Court is the motion of defendant Chrysler Corp. ("Chrysler") to certify questions of law to the Connecticut Supreme Court, and the motion of Smith's Texaco Service Station ("Smith's Texaco") to dismiss Chrysler's third party complaint seeking contribution.

## BACKGROUND

On November 6, 1982, the plaintiff's decedent, Anthony J. Stefano, was operating a 1970 Plymouth Valiant on Route 34 in Derby, Connecticut. Defendant Robert Henley, driving a 1978 Plymouth Fury with the permission of Smith's Texaco, collided with Stefano's vehicle, causing an explosion and fire in which Stefano perished.

Angela Delores Stefano brought suit individually and as executrix of her husband's estate in federal court for wrongful death and loss of consortium against Henley, Smith's Texaco, and Chrysler[1] (the manufacturer of both of the vehicles in the accident).

In May of 1987, the plaintiff settled with Robert Henley and Smith's Texaco. Chrysler, the sole remaining defendant, then sought to implead Smith's Texaco pursuant to Fed.R.Civ.P. 14(a).

## DISCUSSION

### A. Chrysler's Motion to Certify

The precise issue before the Court is whether a joint tortfeasor who is a product seller can bring a claim for contribution from one not in the chain of distribution who has settled with the plaintiff. Chrysler maintains that the novelty of the state law issue makes certification appropriate.

Conn.Gen.Stat. § 51–199a provides in relevant part:

(b) The [Connecticut] supreme court may answer questions of law certified to it by ... a United States District Court where requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

(c) This section may be invoked by an order of any of the courts referred to in (b) of this section upon the motion of any party to the cause.

The United States Supreme Court recognized in *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974), that the use of certification pro-

---

1. Although the complaint in this action did not contain a statutory claim against Chrysler, the holding in *Daily v. New Britain Machine Co.*, 200 Conn. 562, 571, 512 A.2d 893, 899 (1986), indi-

cates that the Product Liability Act preempts common law claims, and provides the exclusive remedy in a product liability suit.

cedures such as those in § 51–199a "rests in the sound discretion of the trial court." The federal courts should, nonetheless, resort "to certification only when doing so would, in the context of the particular case, 'save time energy and resources....'" *L. Cohen & Co., Inc. v. Dun & Bradstreet, Inc.,* 629 F.Supp. 1419, 1423 (D.Conn.1986) (Cabranes, J.) (quoting *Lehman Bros.,* 416 U.S. at 391, 94 S.Ct. at 1744). No such savings would be realized in the present matter. The Court has read the briefs, researched the issues, held oral argument and placed the case on the trial list. Certification at this point in the proceedings would not be a benefit, but a hindrance, to the expeditious resolution of this matter. For these reasons, Chrysler's Motion to Certify is hereby DENIED.

### B. *Smith's Texaco's Motion to Dismiss*

Chrysler has alleged in its third party complaint that if it is found liable for the death of Anthony J. Stefano, it has a right to contribution from Smith's Texaco. Smith's Texaco argues for dismissal of the third party claim on the ground that the Connecticut Product Liability Act creates no right of contribution from one who is not in the chain of distribution. Alternatively, Smith's Texaco asserts that allowing contribution against a defendant who settles will discourage settlement by creating indefinite liability.

Chrysler, conversely, contends that the language of the relevant statutory provisions clearly allows for contribution from one not in the chain of distribution of the product which allegedly caused harm. Chrysler further maintains that the settlement of Smith's Texaco with the plaintiff should not insulate Smith's Texaco from contribution to Chrysler because such a result may be inconsistent with the theory underlying comparative fault: no defendant should bear a greater percentage of fault than that for which he is responsible.

Conn.Gen.Stat. § 52–577a(b) provides that "In any such [product liability] action a product seller may implead any third party who is or may be liable for all or part of the claimant's claim, if such third party defendant is served with the third party complaint within one year from the date of the cause of action ... [on the underlying claim]." [2]

Despite the assertions of Smith's Texaco to the contrary, § 52–577a(b) does not limit impleader actions to those persons or entities in the chain of distribution. The express language of the statute allows for impleader against "any third party." *See Howe v. Jayfro Corp.,* 12 CLT No. 3 at 15 (1986) (Eagan, Magistrate) (approved by Blumenfeld, J.) (based upon the plain meaning of the statutory language of § 52–577a(b), one not a product seller remains subject to a third party complaint for contribution; motion to dismiss defendant product seller's third party complaint denied); *Kyrtatas v. Stop & Shop, Inc.,* 205 Conn. 694, 700, 535 A.2d 357, 359 (1988) (no distinction drawn between product sellers and others in court's holding that the Product Liability Act eliminates need for indemnification claims).

Moreover, it is evident that, in the context of a product liability claim, the inveterate principle of Connecticut common law prohibiting contribution among joint tortfeasors, *see Gomeau v. Forrest,* 176 Conn. 523, 524, 409 A.2d 1006, 1007 (1979) (citing *Fox v. Fox,* 168 Conn. 592, 595, 362 A.2d 854, 857 (1975); *Rose v. Heisler,* 118 Conn. 632, 633, 174 A. 66, 67 (1934); *Caviote v. Shea,* 116 Conn. 569, 575, 165 A. 788, 790 (1933)), has been abrogated by Conn.Gen.Stat. § 52–572o (e). [3] *See Howe,* 12 CLT at

---

**2.** At oral argument, Smith's Texaco raised the issue that Chrysler's impleader is untimely under § 52–577a(b). The one year limitation period has, however, been held to be procedural, and is therefore displaced in a federal action by Fed.R.Civ.P. 14(a). *See Kearney v. Philips Indus., Inc.,* —— F.Supp. ——, No. B–84–511 slip op. (November 10, 1987) (Eginton, J.).

**3.** § 52–572o (e) provides:

If a judgment has been rendered, any action for contribution must be brought within one year after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the right of action of the claimant against him and commenced the action for contribution within

16; *Kyrtatas,* 205 Conn. at 701, 535 A.2d at 360. Consequently, a product seller seeking contribution may implead one not in the chain of distribution. This conclusion, however, does not dispose of the question whether a non-settling defendant may bring an action for contribution from a defendant who does settle. This remains a matter of first impression.

The effect of settlement on contribution presents a particularly nettlesome problem, *see Prosser and Keeton on the Law of Torts,* § 50 at 340 (5th ed. 1984), which has spawned a substantial amount of precedent and legislation. *See* Annotation, *Contribution Between Joint Tortfeasors as Affected by Settlement With One or Both by Person Injured or Damaged,* 8 A.L.R.2d 196 (1949) (Supp.1985 & 1988). Without the benefit of statutory guidance, deciding the appropriate approach to employ requires that the Court "canvass the ... rules for which there is some support..." *Donovan v. Robbins,* 752 F.2d 1170, 1180 (7th Cir.1985) (discussion of effects of settlement on contribution in context of ERISA claim).

### 1. The "Traditional Rule"

The "traditional rule" does not bar a non-settling defendant's right to seek contribution, where such right exists, from a joint tortfeasor who does settle. *See Prosser and Keeton,* § 50 at 340. If the traditional rule were applied to the facts of this case Chrysler could implead Smith's Texaco, with the following results.

Conn.Gen.Stat. § 52–572*o* (b) requires the jury, by response to special interrogatories, or the court, in a trial to the bench, to determine "the percentage of responsibility allocated to each party, including the claimant, as compared with the combined re-

sponsibility of all parties to the action." If Chrysler is allowed to implead Smith's Texaco, the latter would be considered a party to the action, even if the plaintiff's claim against Smith's Texaco had been withdrawn. *See Black's Law Dictionary* 1010 (5th ed. 1979) (defining party as one by or against whom a legal suit is brought). As a party to the action, Smith's Texaco would be subject to a finding of a percentage of liability for the plaintiff's harm.

Subsequent to the allocation of percentages of responsibility for the harm that plaintiff has suffered, the Court would enter judgment according to the instructions contained in Conn.Gen.Stat. § 52–572*o* (d). That section requires the Court, using the findings of percentage of fault under § 52–572*o* (b), to "enter judgment against parties liable on the basis of the common law of joint and several liability of joint tortfeasors ..." and to "specify the proportionate amount of damages allocated against each party liable according to the percentage of responsibility established for such party."

Consequently, Chrysler, after a plaintiff's verdict, could have imposed upon it the full measure of damages found under joint and several liability. Under such circumstances, whether it could then seek contribution from Smith's Texaco would depend on the amount that Smith's Texaco had paid in settlement.[4] If Smith's Texaco had paid less in settlement than the amount that it should have according to the finding of its percentage of fault, Chrysler could then seek contribution for the difference between the amount paid in settlement and the adjudicated percentage of liability of

---

one year after payment, or (2) agreed while the action was pending to discharge the common liability and, within one year after the agreement have paid the liability and brought an action for contribution.

Fed.R.Civ.P. 14(a), pursuant to which Chrysler has endeavored to implead Smith's Texaco, serves "to accelerate" a determination of liability so that a contribution claim can be concurrently litigated with the underlying claim, even though "the state substantive law does not recognize a right of contribution until the original defendant has paid more than his ... share."

Wright & Miller, 6 *Federal Practice and Procedure* § 1448 at 264 (1971). *See also Howe,* 12 CLT at 16. Consequently, in the instant matter, Chrysler need not go through the procedures established in § 52–572*o* (e) before attempting to implead Smith's Texaco.

**4.** Settlement amounts should be set off from the verdict. *See Alfano v. Insurance Center of Torrington,* 203 Conn. 607, 611, 525 A.2d 1338, 1340–41 (1987).

Smith's Texaco.[5]

The result of the foregoing admittedly seems equitable. Chrysler would pay only for its percentage of fault; Smith's Texaco would bear no more than its full percentage of responsibility, and the plaintiff would be fully compensated for the injuries suffered, even where she originally settled with a defendant for an amount representing less than that defendant's full measure of liability. Nonetheless, allowing one who settles to be brought back in for contribution presents a disincentive to settlement because it does not allow for the conclusive determination of a settling party's liability. *See Prosser and Keeton,* § 50 at 340. Moreover, it increases the number, complexity and duration of actions, thereby defeating the judiciary's great interest in expediency and finality.

2. The Comparative Fault Rule

█ As an alternative to the traditional rule, which allows an action for contribution from a joint tortfeasor who settles, the comparative fault rule requires the jury or the court (1) to determine the percentage of the plaintiff's harm attributable to the settling defendant, (2) to multiply that percentage by the judgment against the non-settling defendants, and then (3) to deduct the resulting amount from the judgment, thereby precluding suit for contribution against the settling defendant. *See Donovan,* 752 F.2d at 1180; Uniform Comparative Fault Act, 12 U.L.A. 47, § 6 comment (pocket part).

If the Court were to apply the comparative fault rule in the context of the Product Liability Act, a question arises under § 52–572*o* (b) regarding the allocation of responsibility for fault. As discussed above, the statute requires the jury, by response to special interrogatories, or the court, in a trial to the bench, to determine "the percentage of responsibility allocated to each *party,* including the claimant, as compared with the combined responsibility of all *parties to the action*" (emphasis added). Chrysler's opposition to the appli-

cation of the comparative fault rule stems primarily from its concern that if Smith's Texaco is not impleaded, it will not be a party to the action whose fault can be adjudicated at trial. Therefore, if judgment enters according to joint and several liability pursuant to § 52–572*o* (d) against Chrysler, it will be saddled with the entire burden of the verdict, and left without any recourse for contribution for fault above and beyond its true liability. Chrysler's concerns, however, are unfounded.

Section 52–572*o* (b) indicates that percentages of liability are to be apportioned among or between "parties to the action." A defendant who settles, and against whom the complaint is accordingly withdrawn, would no longer be considered a party to the action. Nonetheless, nothing in § 52–572*o* prohibits a defendant to a lawsuit from introducing at trial evidence that one who no longer is, or never was, a party to the lawsuit remains responsible in some measure for the harm incurred. *Rau v. Rouselle Corp.,* 14 CLT No. 16 at 26–27 (1988) (Burns, J.). Indeed, where the defendant makes a general denial of its liability, the defendant may introduce evidence that the injury was caused by the fault of a third person for whom the defendant was not responsible. *See Gilbert v. Eli Lilly & Co., Inc.,* 56 F.R.D. 116 (D.P.R.1972); 65A C.J.S. Negligence § 201(3) 432–33.

After review of the evidence introduced at trial which indicated a settling defendant's share of liability, the trier would allocate to such settling individual its percentage of fault, an act consistent with § 52–572*o* (b). This percentage of fault would then be multiplied by the verdict, with the resulting amount subtracted from the total verdict. *See Donovan,* 752 F.2d at 1180. The sum remaining after such calculation would then provide the basis of the entry of judgment under § 52–572*o* (d) according to the dictates of joint and several liability, leaving any non-settling defendant free to pursue other defendants or

---

**5.** Whether Smith's Texaco would have a cause of action for contribution from Chrysler if it results that Smith's Texaco paid more than its share of adjudicated fault in settlement is another question which the Court need not decide at this point in time.

third parties for any amount above the non-settling defendant's percentage of fault.

Adoption of the comparative fault rule would have several economical effects. The non-settling defendant would be left to pay no more than its percentage of fault, and would realize a savings of time and effort by not having to pursue a settling defendant for contribution. The settling defendant could rest assured that settlement would indeed conclude its liability, and, in those cases where it settles for less than the percentage of fault that the jury attributes to it, the settling defendant will have made a wise strategic decision resulting in monetary savings. Although the plaintiff who settles with one of the parties for less than that individual's percentage of adjudicated fault will recover less than the full measure of fault as calculated at trial, such a result remains justifiable as a trade-off for the savings in time, attorney's fees, and anxiety that settlement effects. Overall, the comparative fault rule, when compared with the traditional rule, stands as the more favorable and equitable choice.

The comparative fault rule, in addition to achieving equity and efficiency in the resolution of a lawsuit, also comports with the approach that the Connecticut legislature has chosen to adopt in Conn.Gen.Stat. § 52–572h(n), which states that in a negligence action,

> A release, settlement or similar agreement entered into by a claimant and a person discharges that person from all liability for contribution.... However, the total award of damages is reduced by the amount of the released person's percentage of negligence....

The Court can perceive no valid reason why the same approach should not be utilized in a product liability claim. Accordingly, the Court here adopts the comparative fault rule as the most logical and beneficial one under the circumstances.

In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must construe the complaint in the light most favorable to the claimant, and accept the allegations of the non-moving party as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Fine v. City of New York,* 529 F.2d 70 (2d Cir. 1975). Moreover, the complaint should not be dismissed unless "it appears beyond a doubt that the ... [claimant] can prove no facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Because the Court adopts a rule which bars non-settling defendants from seeking contribution from a settling defendant, it is impossible for Chrysler "to prove ... [a] set of facts in support of ... [its] claim which would entitle it to relief." *Id.* Therefore, the motion to dismiss of Smith's Texaco is hereby GRANTED.

### CONCLUSION

Chrysler's motion to certify questions of law to the Connecticut Supreme Court is DENIED. The motion to dismiss of Smith's Texaco is GRANTED.

SO ORDERED.