[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS TO STRIKE OF DEFENDANT FORTRESS SCIENTIFIC LIMITED
The plaintiffs, Valeen Thivierge and Robert Thivierge, are husband and wife. The defendants are Fortress Scientific Limited (hereinafter "Fortress"), Coopers Surgical Supply, Inc. (hereinafter "Coopers") and its successor, Homedco, Inc. (hereinafter "Homedco" and collectively "Coopers/Homedco"). This memorandum addresses two motions. First, there is Fortress' motion to strike the seventh count in the plaintiffs' complaint. Second, there is Fortress' motion to strike the cross claim of the co-defendants Cooper/Homedco in its entirety.
The underlying action is the plaintiffs' product liability claim against all of the defendants.
 I.
The plaintiffs filed a revised nine-count complaint against the defendants, which alleges that on September 17, 1986, the plaintiffs purchased a wheelchair manufactured by Fortress from Coopers, a retail supplier of medical equipment. The wheelchair was for Robert's use. On July 13, 1989, Valeen attempted to inflate one of the tires on the wheelchair. While doing so, the rim of the tire "blew off," causing her personal injuries. Based on these facts, the plaintiffs asserted a product liability claim pursuant to General Statutes 52-572m et seq., the Product Liability Act (hereinafter "PLA") against the defendants. In count seven, directed at the defendant Fortress, Robert realleges the facts set forth previously, and further alleges that he is Valeen's husband. Robert seeks, in count seven, damages for loss of consortium.
Fortress moved to strike count seven of the plaintiffs' complaint on the ground that loss of consortium is not a category of damages which is recoverable in the context of a product liability action. Accompanying the motion is a memorandum of law. In it, Fortress argues that the case of Golub v. Chrysler Corporation, Superior Court, CT Page 5811 Judicial District of Hartford/New Britain at New Britain, Docket No. 0501082 (October 22, 1992, Hennessey, J.), is directly on point with the facts of the instant case. that case, a loss of consortium claim was found to be barred by the exclusivity provision of the PLA.[1] Fortress further argues that loss of consortium claims are barred in similar statutory causes of action and that the legislative history of the PLA supports its position.
The plaintiffs filed an objection to Fortress' motion to strike on the ground that under Practice Book 150, a party who has filed a pleading seeking to revise a complaint cannot later seek further changes through subsequent requests if the later changes could have been requested in the initial filing. In a pleading filed the same day and styled "Motion for Remedial Order," the plaintiffs state that Fortress filed "at least three pleadings under Practice Book 112: specifically a request to revise dated June 11, 1992, a request to revise dated August 12, 1992 and a motion to strike dated January 27, 1993, all of which could have been filed on . . . June 11, 1992." (Pleadings, Plaintiffs' Objection to Motion to Strike.)
On December 31, 1992, Coopers/Homedco filed a cross claim against Fortress. In the cross claim, Coopers/Homedco allege that at the time of the sale of the wheelchair to the plaintiffs, Fortress warranted that said wheelchair was fit for the ordinary purpose for which it was to be used and that it was reasonably safe and free from dangerous defects. The defendants further allege that if the wheelchair was defective as alleged by the plaintiffs, the defective and dangerous condition constitutes a breach of Fortress' warranties. The defendants seek "consequential damages, including damages for any judgment that may be entered against the defendants and attorney's fees and costs incurred in defending this action, pursuant to General Statutes42a-2-715(2)b as permitted under General Statutes52-572n(c)."
Fortress filed a motion to strike the cross claim in its entirety on the ground that the PLA precludes a Uniform Commercial Code (hereinafter "UCC") cross claim for "commercial loss" between co-defendants in a personal injury case. Accompanying the motion is a memorandum of law. In it, Fortress argues that Coopers/Homedco's claim is against a CT Page 5812 product seller, Fortress, for harm caused by a product and is therefore governed by the PLA. Fortress further argues that the damages sought by Coopers/Homedco are essentially the same damages as would arise from an indemnification claim. Fortress then argues that in Kyrtatas v. Stop Shop, Inc.,205 Conn. 694, 535 A.2d 357 (1988), the court has held that a common law indemnification claim cannot be brought in a product liability action. Fortress concludes, therefore, that the cross claim in the instant case should be barred by the exclusivity provisions of the PLA for the same reasons the court in Kyrtatas barred the common law indemnification claim. Additionally, Fortress argues that Coopers/Homedco are not seeking recovery of a commercial loss and therefore the UCC action is not appropriate. Therefore, Fortress argues, because Coopers/Homedco's action for breach of warranty cannot be brought in the context of a product liability action and because the UCC does not provide for such a cause of action, the court should strike the cross claim in its entirety.
Coopers/Homedco filed a memorandum of law in opposition to the motion to strike. Coopers/Homedco argue that General Statutes 52-572n(c) authorizes an action for commercial loss caused by a product to be brought under the UCC. They argue that they are seeking damages for a "commercial loss" and therefore can maintain the UCC action against Fortress.
 II.
The purpose of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432 (1989). In ruling upon a motion to strike, the court must take as admitted all well pleaded facts and construe them in a manner most favorable to the plaintiff. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988). If a pleading contains the necessary elements of a cause of action, it will survive a motion to strike. D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206,218-19, 520 A.2d 217 (1987).
A. The plaintiffs' Practice Book 150 argument in opposition to Fortress' motion to strike the plaintiff Robert Thivierge's claim for loss of consortium. CT Page 5813
Practice Book 150 provides:
 Whenever any party files a request to revise or any subsequent motion or pleading in the sequence provided in 112 and 113, that party thereby waives any right to seek any further pleading revisions which he might then have requested.
Practice Book 112 and 113 in turn address the order of pleadings and waiver of the right to plead for filing out of order respectively.
Practice Book 150 applies to the filing of a request to revise after a separate request to revise has been filed. Practice Book 150 does not prohibit the filing of a motion to strike after a request to revise which is in fact, according to Practice Book 112, the proper order for such pleadings. In the instant case, Fortress filed a request to revise on August 12, 1992 followed by a motion to strike filed January 27, 1993. While the plaintiffs may have raised an issue with the filing of the August 12th request to revise after the April 11th request to revise, the filing of the motion to strike conformed to the Practice Book, and this claim of the plaintiffs fails.
B. Motion to strike the plaintiff Robert Thivierge's claim for loss of consortium.
General Statutes 52-572n(a) provides that "[a] product liability claim . . . may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." General Statutes 52-572m(b) defines a "product liability claim" as including all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty CT Page 5814 to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent. General Statutes 52-572m(d) defines "harm" as "damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, harm does not include commercial loss."
The Connecticut Supreme Court recognizes a cause of action on behalf of a spouse for the loss of consortium of an injured marital partner. Hopson v. St. Mary's Hospital,176 Conn. 485, 408 A.2d 260 (1979). It appears that the issue of whether a spouse's loss of consortium claim is barred in an action brought pursuant to the PLA has not yet been decided by a Connecticut appelllate [appellate] court, and it is evident that there is a split of opinion in the Superior Court as to whether a loss of consortium claim can be maintained in a product liability action. In Bugnacki v. Miller Printing Corp., 2 CSCR 456 (March 30, 1987, Gill, J.), the court denied a motion to strike a loss of consortium claim in a product liability action. The court in Bugnacki held that the loss of consortium claim was not barred by the PLA because the claim is derivative of the injured spouse's claim under the statute. Id.
The court stated:
 The claim of loss of consortium is an element of damages derived from the central set of facts alleged as the basis of the defendant's liability. Allen v. Endrokaitis, 35 Conn. Sup. 286, 290-291 (Super.Ct., 1979). . . . The [PLA] has been interpreted to provide an exclusive remedy. Daily v. New Britain Machine Co., 200 Conn. 562
(1986). . . . General Statutes 52-572m(b) . . . specifically allows claims for personal injuries. Pursuant to the statute, the plaintiff has brought an action for personal injuries. The loss of consortium claim by the plaintiff's wife is derivative of the plaintiff's cause of action and not of the statute. Therefore, the plaintiff CT Page 5815 wife's allegations support a cause of action allowed under the statute and the motion to strike on this count should be denied.
Id.
In Lindsey v. Lindberg Furnace, 8 CSCR 169 (January 12, 1993, Thompson, J.), the court also addressed the issue of whether a loss of consortium claim can be maintained in a PLA action. In allowing the consortium claim to be maintained, the court reasoned that:
 Prior to the enactment of the Product Liability Statute, one who is alleged to have suffered injury as a result of a defective product could bring an action in negligence, breach of warranty and/or strict product liability. The purpose of the Product Liability Act was to consolidate those various causes of action into one exclusive action for harm caused by a product. See Daily v. New Britain Machine Company, 200 Conn. 562 (1986). This court does not, however, read the language of the Act as intending to eliminate a cause of action for loss of consortium, which, as the defendant apparently concedes, existed prior to its enactment. If such was the intent of the legislature, it could have specifically said so.
the legislative history of the PLA further supports the contention that its purpose was to simplify pleading. In Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 562 A.2d 517
(1989), the court interpreted the PLA to be the exclusive remedy for claims falling within its scope.
From the legislative history set forth in Winslow, it is clear that the legislature intended all product liability claims to constitute a single cause of action. The fact that a product liability claim can comprehend a number CT Page 5816 of distinct theories does not preclude a single count complaint.
In Golub v. Chrysler Corporation, 7 CSCR 1295
(October 22, 1992, Hennessey, J.), however, the court, after a review of the appellate court cases which have interpreted other statutory causes of action to exclude claims for loss of consortium by a spouse of an injured party covered by the terms of the statute, held that the PLA precluded the plaintiff's claim for loss of consortium. The Golub court relied on the following cases in which no claim for loss of consortium was found. Ladd v. Douglas Trucking Co.,203 Conn. 187, 523 A.2d 1301 (1987)[2] (wrongful death statute); Sanzone v. Board of Police Commissioners, 219 Conn. 179,592 A.2d 912 (1991) (defective highway statute); Wesson v. Milford, 5 Conn. App. 369, 498 A.2d 505 (1985), cert. denied,197 Conn. 817, 500 A.2d 1337 (1985) (workers' compensation statute, injured spouse's claim compensable). The court also said that:
 the language of the product liability statutes indicates no intent on the part of the legislature to include a loss of consortium claim by the spouse of a person injured by a defective product within the purview of the statutory product liability cause of action. . . . [T]he use of the term "personal injury" [in the PLA] connotes physical or emotional injuries suffered by a person directly injured by a defective product, not losses suffered by a spouse resulting from the other spouse's "personal injury" and thus only derivative of the injured spouse's product liability claim [T]he phrase "shall include, but is not limited to, all actions based on the following theories . . ." does not . . . evidence any intent on the part of the legislature to encompass other causes of action, such as loss of consortium, which are derivative of the single product liability cause of CT Page 5817 action, but rather an intent that a product liability claim encompass numerous theories of liability arising out of a single cause of action based upon a defective product.
Finally, the court noted that:
 The legislature has enacted legislation which specifically provides for a cause of action for postmortem loss of consortium in wrongful death actions. See General Statutes 52-555a — 52-555d. The legislature could have similarly expressly provided for loss of consortium claims by spouses in the context of other statutory causes of action arising from personal injuries suffered by spouses but to date has not done so.
This court finds the reasoning of the Lindsey and Bugnacki courts persuasive as the PLA did not create a new statutory cause of action; it merely consolidated existing causes of action into a single one. Therefore, the cases barring a consortium claim in actions for wrongful death, on a defective highway or where the injured spouse had a workers' compensation claim are not controlling.
To the contrary, the Ladd court, supra, reaffirmed its recognition of a cause of action on behalf of a spouse for the loss of consortium where the other spouse was injured by an unintentional tort. The Ladd court also found the right of recovery to exist for the loss of consortium occurring between the date of accident and ensuing death of the injured spouse, and that such right of recovery was not extinguished by such death.
As the wife's claim under the PLA includes common law causes of action based on unintentional tort, and the husband's loss of consortium claim is derivative of the wife's claim, this court recognizes the right of recovery for a loss of consortium in the case of an injured spouse's claim CT Page 5818 under the Product Liability Act.
Accordingly, Fortress' motion to strike the seventh count of plaintiffs' complaint is denied.
 III. Fortress' motion to strike Coopers/Homedco's cross claim in its entirety.
In the cross claim, Coopers/Homedco characterizes its claim as one for "consequential damages, including damages for any judgment that may be entered against the defendants and attorney's fees and costs incurred in defending this action, pursuant to General Statutes42a-2-715(2)b, as permitted under General Statutes52-572n(c)."
Fortress filed a motion to strike the cross claim in its entirety on the ground that the PLA precludes a Uniform Commercial Code (hereinafter "UCC") cross claim for "commercial loss" between co-defendants in a personal injury case. Fortress argues that the damages sought by Coopers/Homedco are essentially the same damages as would arise from an indemnification claim. Fortress argues, therefore, that the holding in Kyrtatas, supra, that a common law indemnification claim cannot be brought in a product liability action, should apply to the facts in the instant case. Additionally, Fortress argues that Coopers/Homedco are not seeking recovery of a commercial loss and therefore the UCC action is not appropriate. Therefore, Fortress argues, because Coopers/Homedco's action for breach of warranty cannot be brought in the context of a product liability action and because the UCC does not provide a cause of action, the court should strike the cross claim in its entirety.
Coopers/Homedco filed a memorandum of law in opposition to the motion to strike. Coopers/Homedco argue that General Statutes 52-572n(c) authorizes an action for commercial loss caused by a product to be brought under the UCC. They argue that they are seeking damages for a "commercial loss" and therefore can maintain the UCC action against Fortress.
Coopers/Homedco's claims appear similar to a claim for indemnification. Notwithstanding: CT Page 5819
 Although a breach of warranty action against a seller for consequential loss arising from a third-party claim is quite similar to a claim for indemnification, to the extent that it makes a difference under local rules it should be treated as a simple claim for consequential loss and not subjected to special rules for indemnification claims. . . . Regardless of the nature of the damages for which the buyer has been found responsible to recover amounts paid to the third party is always a claim for consequential damages.
Anderson, Damages Under the Uniform Commercial Code, 11.31 (1991).
General Statutes 52-572n(c) provides:
 As between commercial parties, commercial loss caused by the product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, Title 42a, the Uniform Commercial Code.
The court disagrees with Fortress, as Fortress and Coopers/Homedco are clearly commercial parties, and since Coopers/Homedco are seeking damages for a commercial loss, the PLA is inapplicable, and the court must therefore deny the motion to strike.[3]
When "analyzing a statute, it is required that `words and phrases shall be construed according to the commonly approved usage of the language.'" Continental Ins. Co. v. Cebe-Habersky, 214 Conn. 209, 213, 571 A.2d 104 (1990) (quoting General Statutes 1-1(a)). The word "commercial" has been defined as relating "to `commerce' and has profit or success as its chief aim." United Sec., Inc. v. PGP CT Page 5820 Industries, 1 Conn. L. Rptr, 388, 389 (March 21, 1990, Murray, J.) (citing to The American Heritage Dictionary of the English Language, 267 (1978)). Additionally, "commercial" is defined as "[i]nvolved in work that is intended for the mass market." The American Heritage Dictionary, 297 (2d ed. 1982). Fortress is a distributor/manufacturer of medical supplies and Coopers/Homedco is a retailer of medical supplies. It is therefore evident that Fortress and Coopers/Homedco are commercial parties as both participate in enterprises which have profit as their chief aim.
The next issue is whether or not the damages sought by Coopers/Homedco are for commercial losses. "Commercial loss" has not been defined by the state's appellate courts. Several Superior Court decisions and two Federal court decisions have discussed the term in the context of the PLA and two somewhat divergent interpretations have emerged. However, under either interpretation the loss claimed by Coopers/Homedco is a commercial loss.
A narrow definition of commercial loss emerged from American Manufacturers Mutual Ins. Co. v. Harrington Hoists, Inc., 4 CSCR 564 (June 13, 1989, Berdon, J.). In American Manufacturers, the defendant Harrington sold a defective hoist to a plaintiff, Schultz, which broke causing damage to an electric motor and to the work premises. Another plaintiff, American Manufacturers Mutual Ins. Co. (hereinafter "AMMI") paid Schultz for the damage caused by the hoist less a deductible portion under its insurance policy. Id. Schultz then sued Harrington for its deductible and AMMI sued Harrington under the subrogation terms of the policy for reimbursement for the damages it paid to Schultz. Id. The court began its analysis by stating that since the legislature modified "loss" by the term "commercial," it showed an intent to limit the type of loss recoverable under the PLA. Id. Because the legislature did not define the term "commercial loss," the court looked to the "common understanding" of the term as expressed in a dictionary definition of commercial and concluded:
 It is clear therefore that a commercial loss within the meaning of the PLA has reference to loss of profits or consequential economic CT Page 5821 losses as opposed to property damage and personal injuries.
Id. The court noted legislative history in support of its position. Specifically, the court cited to the following comment, by a non-legislator, from a discussion of the amendment to the PLA which excluded commercial losses from its coverage:
 With respect to the first portion of the Bill, that dealing with commercial losses . . . [the amendment] would permit commercial entities to bring product liability claims for property damage and personal injury damage caused by a product. However, commercial loss, such as alleged lost profit, loss of commercial opportunities, loss of good will and the like, would not be sought under a product liability claim. Rather, actions for such commercial loss would be brought under [and] governed by the [UCC]. Joint Judiciary Comm. Proc., 748 (March 19, 1984).
Id.
Finally, the court commented that limiting the definition of commercial loss to consequential economic losses, but not property damage and personal injuries, would be entirely consistent with the development of product liability law. Id. Specifically, the court noted that case law on strict liability and interpretations of the Uniform Product Liability Act, which the PLA was modeled after, support its limited definition of commercial loss. Id.
The Harrington definition of commercial loss was cited with approval in City of Danbury v. Topside Sealers, Inc., Superior Court, Judicial District of Danbury, Docket No. 309268 (December 30, 1992, Moraghan, J.).
Further, in G. R. Cummings Company v. Beazer East, Inc., 7 CSCR 931, 332 (July 7, 1992, Zoarski, J.), the plaintiff, a roofing contractor, filed a complaint against CT Page 5822 the defendant, on the theories of defective product, breach of warranty and nondisclosure. The plaintiff alleges that the defendant's product damaged a roof the plaintiff was constructing and sought damages for the repair and the replacement of the roof. The defendant filed a motion to strike on the ground that the PLA was the exclusive remedy for the plaintiff. The court, after adopting the definition of "commercial loss" set forth in Harrington, held that "[t]he losses alleged by the plaintiff represent money that would have been profits from the job rather than personal injury or damage to the plaintiff's property" and thus were commercial loss.
In BRT Corporation v. New England Masonry Co., Superior Court, Judicial District of Litchfield, Docket No. 0048920 (October 25, 1991, Pickett, J.), the plaintiff general contractor asserted a PLA claim for damages against a subcontractor whom the plaintiff alleges built a defective roof on one of the plaintiff's projects. The defendant moved to strike the plaintiff's claim on the ground that the claim is for commercial loss between commercial parties and thus not recoverable under the PLA. In granting the motion to strike, the court, citing to Harrington for the definition of commercial loss, held that insofar as the plaintiff general contractor "seeks damages for economic costs derived from labor, operating costs, lost profits, and liability for damages to the individual building owner's roof, such damages represent commercial loss as is stated in [the PLA]. . . ."
The court, in Producto Machine Company v. Ajax Magnethermic Corporation, 3 CSCR 66 (November 10, 1987, Burns, J.), adopted a broader definition of "commercial loss" than the court in Harrington. In Producto, the plaintiff brought an action against the defendant for damages allegedly caused by a defective product designed, manufactured and sold by the defendant. The plaintiff's damages included damage to the product itself, damage to its work premises, loss of production and losses and expenses incurred for cleanup. The defendant sought to strike the PLA count on the ground that the alleged damage is commercial loss and recovery under the PLA is barred. The issue before the court was whether the term "commercial loss" included damage to property, other than the product itself. The court cited Verdon v. Transamerica Ins. Co., 187 Conn. 363, 372 (1982), wherein the court construed the term "damage to property," as used in the CT Page 5823 PLA's definition of harm, to encompass all types of economic harm. The court in Producto also noted the Proposed Uniform Product Liability Act, S. 666, 100th Cong. 1st Sess. 102(a)(5) (March 6, 1987), for its definition of "commercial loss" as "economic injury, whether direct, incidental or consequential, including property damage and damage to the product itself, incurred by persons regularly engaged in business activities consisting of providing goods and services for compensation." Id., 67.
One federal court case adopts this broad definition of "commercial loss." In Connecticut General Life Ins. Co. v. Grodsky Service, 781 F. Sup. 897 (D. Conn. 1991), a commercial tenant brought suit to recover under the Connecticut PLA for damages it suffered when a water pipe ruptured in the building. The damages claimed included salaries paid to employees while the building was unusable, rent paid on the offices while unusable, expenses paid to allow some employees to continue to work in the offices, expenses for cleanup, and lost profits from a cafeteria business that was closed while the offices were unusable. Id. 898-99. The defendants included the party who installed the pipe connectors alleged to have ruptured and the distributor of the connectors. Id., 898. The defendants cross claimed against each other and against the manufacturers of the pipe connectors. Id. The defendants moved for summary judgment against one of the plaintiffs on the ground that the damages asserted against it were commercial losses not recoverable under the PLA. Id. The court noted that the narrow definition of "commercial loss" given in Harrington, supra, was based primarily on that court's interpretation of the comment of a non-legislator. Id. The court instead focused on the rationale of the PLA and adopted a broad definition of "commercial loss":
 Commercial loss as used in the [PLA] includes all economic loss, direct or consequential, though possibly not physical property damage and damage to the product itself.
Id., 901.
Coopers/Homedco claim "consequential damages, including damages for any judgment that may be entered CT Page 5824 against the defendants and attorney's fees and costs incurred in defending this action, pursuant to General Statutes42a-2-715 (2)b as permitted under General Statutes52-572n(c)." The claimed damages in the instant case cannot be distinguished, in a rational way from such damages as an insurance policy deductible, reimbursement for the damages paid to an insured, the repair and replacement costs that one party was forced to pay because of a defective product, or the costs associated with damage caused by a ruptured water pipe such as salaries paid to employees while unable to work in the damaged offices. All of these damages were determined to be commercial losses under the PLA.
Even if Coopers/Homedco's cross claim can be broadly read as one for indemnification, it is not one for common law indemnification and Fortress' reliance on Kyrtatas, supra, is misplaced. The Kyrtatas court said: ". . . the common law doctrine of indemnification is inconsistent with provisions of the product liability act concerning comparative responsibility, award of damages and contribution under General Statutes 52-572(o)." Id., 699; and the court held therefore that the PLA abrogated common law indemnification principles where all potential defendants are parties. Id., 702, n. 2. The court specifically stated that it did not address when a party could seek indemnification for liability imposed in a product liability suit based on a statutory or express contractual claim. Id., 703. Coopers/Homedco's cross claim, even if sounding in indemnification, is statutory and based on the UCC.
Accordingly, this court concludes that Coopers/Homedco have asserted a claim for commercial loss caused by a breach of warranty, a claim which cannot be asserted under the PLA. Instead it is properly brought under the UCC as Coopers/Homedco have done. Therefore, the court denies Fortress' motion to strike, Coopers/Homedco's cross claim because the claim for breach of warranty set forth in said cross claim is legally sufficient.
Teller, J.