[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION REGARDING DEFENDANTS WEILER ASSOCIATES' AND DONALD STRONG'S MOTION TO STRIKE (#216)
On February 24, 1999, the plaintiff Amity Regional School District No. 5 (Amity) filed a thirty-seven count complaint against fourteen defendants, including Weiler Associates (Weiler) and Donald Strong. Strong allegedly had represented himself to Amity as a licensed professional surveyor in the State of Connecticut, and as a principal of Weiler. Weiler, along with several alleged "design team" members, participated in renovations and additions to Amity Regional High School (the "project") located in Woodbridge, Connecticut. Amity alleges in its complaint, among other things, that it has suffered monetary loss as a result of breaches of contract and negligent performance of contracted services. Weiler and Strong (hereinafter referred to as "Weiler") have moved to strike counts thirty (breach of contract), thirty-one (implied breach of contract), thirty-two (neligence) and thirty-seven (indemnification) of the complaint on the basis that counts thirty and thirty-one fail to state sufficient facts indicating that Amity was the intended beneficiary of Weiler's participation on the project, count thirty-two is barred by the economic loss doctrine, and count thirty-seven fails to allege facts sufficient to support a finding of a legal duty of common law indemnification to Amity by Weiler. Amity has opposed the motion. CT Page 9508
The following background facts are derived from the complaint. Amity alleges that in August 1989, it entered into a contract with Maguire Group, Inc. and Maguire Group Architects, Inc. (hereinafter jointly referred to as "Maguire") to provide architectural and engineering design services, prepare contract documents, and administer the bidding and construction on the project on behalf of Amity. It is alleged that prior to the execution of the Amity-Maguire contract, Maguire represented to Amity that it would use its own personnel on the project. However, according to the complaint, Maguire subsequently underwent a corporate reorganization and no longer had the personnel necessary to perform its required obligations. Maguire then enlisted subcontractors, Weiler being one. "In or about January 1990, Maguire Group entered into a subcontract with Weiler to have Weiler prepare an A-2 survey . . . for the intended benefit of Amity." Complaint, Preface, ¶ 26.[1] Amity further alleges that Weiler "stamped a portion of the civil set of plans that were part of the project drawings for the purpose of having Amity accept, approve and rely upon these drawings for construction of the project." Complaint, Preface, ¶ 29. Further facts will be disclosed as necessary for discussion of the motion.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted . . ." (Citation omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270, 709 A.2d 558 (1998). "A motion to strike admits all facts well pleaded." Parsons v. United Technologies Corp., 243 Conn. 66,68, 700 A.2d 655 (1997). "In deciding upon a motion to strike . . . a trial court must take the facts to be those alleged in the complaint. . . . and cannot be aided by the assumption of any facts not therein alleged." (Citations omitted; internal quotation marks omitted.)Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990). "[The motion to strike] does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachos v.CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "The court must construe the facts in the complaint most favorably to the plaintiff."Faulkner v. United Technologies Corp., 240 Conn. 576, 580, 693 A.2d 293
(1997). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . ." (Citation omitted; internal quotation marks omitted.) Id.
Counts thirty and thirty-one are asserted against Weiler for breach of contract and breach of implied contract, respectively. No contract between Amity and Weiler is alleged. Instead, Amity asserts that under the Maguire-Weiler subcontract, Weiler agreed to provide accurate and complete survey work, with Amity as the intended beneficiary, and that this subcontract was breached, resulting in economic loss to Amity. CT Page 9509
Weiler argues that counts thirty and thirty-one should be stricken because Amity was never an intended third party beneficiary of the contract between Maguire and Weiler. Thus, according to Weiler, Amity cannot maintain a cause of action for breach of contract, whether express or implied. Amity contends that as an intended beneficiary of the contract between Maguire and Weiler, it is entitled to enforce the promises of their agreement.
Amity does not allege anywhere in the complaint that it was a party to an express or implied contract with Weiler. "[O]ne who was neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract. . . ." (Citations omitted.) Coburnv. Lenox Homes, Inc., 173 Conn. 567, 570, 378 A.2d 599 (1977). Because Amity was not a party to the Maguire-Weiler contract, Amity cannot state a claim for breach of contract unless it was a third party beneficiary of that agreement.
"The proper test to determine whether a [contract] creates a third party beneficiary relationship is whether the parties to the [contract] intended to create a direct obligation from one party to the [contract] to the third party. . . ." (Citations omitted.) Gateway Co. v. DiNoia,232 Conn. 223, 231 654 A.2d 342 (1995). The text of the contract at issue in Gateway Co. included an agreement by DiNoia and a second defendant to assume the plaintiff tenant's obligations under a particular lease. That language clearly created a direct obligation to Gateway, which the court held was an intended third party beneficiary of the contract between the two defendants.
Amity, on the other hand, has not alleged that any provision of the subcontract between Maguire and Weiler included an express or implied agreement by Weiler to owe a direct obligation to Amity otherwise owed by Maguire to Amity. Instead, Amity alleges that it "was the intended beneficiary of the Maguire Group-Weiler subcontract in that the Maguire Group and Weiler entered into it for the express purpose of benefitting Amity." Complaint, count thirty, ¶ 61 and count thirty-one, ¶ 61. However, "the intent to confer a benefit is irrelevant to the determination of whether [Amity] was a third party beneficiary." Gateway Co. v. DiNoia, supra,232 Conn. 231.
"The intent of both parties to a contract determines whether a third party has contract rights as a third party beneficiary." Grigerik v.Sharpe, 247 Conn. 293, 310, 721 A.2d 526 (1998). The intent of the parties is equally relevant when an implied contract is alleged. "A contract implied in fact, like an express. contract, depends on actual agreement." D'Ulisse-Cupo v. Board of Directors of Notre Dame HighCT Page 9510School, 202 Conn. 206, 211 n. 2, 520 A.2d 217 (1987). An implied contract is not expressed in words but is inferred from the conduct of the parties. Brighenti v. New Britain Shirt Corp., 167 Conn. 403, 406,356 A.2d 181 (1974). ("test is whether the conduct and actions of the parties show an agreement.")
While Amity has alleged that it was an intended beneficiary of the Maguire-Weiler subcontract, that allegation alone is irrelevant to the determination of whether Amity was a third party beneficiary. The complaint otherwise is void of any allegation indicating that Weiler intended (as shown by express language or by conduct) to assume a direct obligation to Amity. Consequently, Amity has failed to plead facts supporting a breach of any express or implied contract with Weiler, and the motion to strike counts thirty and thirty-one therefore is granted.
Count thirty-two is asserted against the "design team," of which Weiler is an alleged member, along with Maguire, the Lukmire Partnership (Lukmire), S3E Klingemann, Inc., and others. In count thirty-two, Amity alleges the same claim for damages as claimed in counts thirty and thirty-one. Count thirty-two merely recasts Amity's claims for breach of contract as a negligence claim against alleged joint tortfeasors.
All of the damages claimed in Amity's complaint are business losses that allegedly resulted from defective performance of contracts. The Connecticut Supreme Court has expressed its intent to respect the agreements of business persons who later claim commercial losses arising out of defective performance of contracts, by barring recovery in negligence for economic loss. See Flagg Energy Development Corp. v.General Motors Corp., 244 Conn. 126, 153, 709 A.2d 1075 (1998).[2] For the reasons discussed in this court's July 26, 2000, memorandum of decision striking count thirty-two as alleged against Lukmire, count thirty-two likewise is stricken as to Weiler and Strong.
In count thirty-seven, Amity claims a right of indemnification against the design team, of which Weiler and others were made members under paragraph 17 of the complaint. Amity alleges that it delegated to Maguire the obligation to perform the architectural and engineering work on the project, for the purpose of fulfilling Amity's obligations to Atlas Construction Company (Atlas) under Amity's contract with Atlas. Amity pleads that if it is determined liable for damages to Atlas in the consolidated action,[3] then the design team is liable for those damages as a result of "the team's" negligence and breaches of contract. Weiler contends in its motion to strike that count thirty-seven fails to state sufficient facts indicating that it owes a duty of common law indemnity to Amity. CT Page 9511
"[I]ndemnity involves a claim for reimbursement in full from one on whom a primary liability is claimed to rest . . ." (Citation omitted.)Kyrtatos v. Stop Shop, Inc., 205 Conn. 694, 701, 535 A.2d 357 (1988). Without duty, there can be no liability. "[I]n the absence of a contract to indemnify, a party is entitled to indemnification only upon proving that the party against whom indemnification is sought either dishonored a contractual provision or engaged in some tortious conduct. . ." (Citation omitted.) Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 74,579 A.2d 26 (1990).
The court already has determined that the complaint in this case fails to properly allege the existence of a contract between Weiler and Amity. whether express, implied or otherwise. Any duty owed by Weiler to indemnify Amity therefore would have to be based on negligent performance of its contract with Maguire.
As discussed above, however, this court recognizes the economic loss rule, barring claims for liability in tort when, as in this case, the loss is merely economic and does not involve physical harm or injury to property.
Amity has not alleged a claim in contract and cannot state a claim for negligence in this action against Weiler and Strong. Consequently, Amity is not entitled to indemnification as sought against these defendants and count thirty-seven therefore is stricken.
The motion to strike (#216) is granted.
ROBET F. McWEENY, J.