[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT EDWARDS SUPERSTORES' MOTION TO STRIKE
This case involves a products liability claim. The plaintiff claims he was injured when a plastic chair he bought at Edwards Superstore collapsed — Edwards distributed the chair so that suit was brought under our products liability act, § 52-572m et seq. Edwards, as defendant, then impleaded Gracious Living Industries, Inc., the alleged manufacturer of the chair. In the third party complaint, Edwards set forth two counts. The first is based on a theory of common law indemnification. The defendant Edwards states that if a jury determines it is liable to the plaintiff for damages, its liability is "passive" and arises directly from the "active negligence" of a defective chair by Gracious Living.
The second count basically repeats the factual allegations of the first count denying negligence and asserting that Gracious CT Page 8400 Living, the manufacturer, is responsible for any defect in the chair and any damages caused to the plaintiff. The count then asserts that the manufacturer "is a necessary party under the provisions of § 52-572(o) of the General Statutes in order to have a complete determination of the issues involved in the present case."
Shortly after Edwards filed its third party complaint against Gracious Living, the plaintiff filed a complaint itself against the manufacturer, Gracious Living, so that it is also now a direct defendant in the plaintiff's action.
Gracious Living has now moved to strike both counts claiming both counts are legally insufficient to state a claim. Pratt v.Town of Old Saybrook, 225 Conn. 177, 189 (1993).
 (1)
As to the common law indemnification claim in the first count, Gracious Living points to the fact that it is a direct defendant in the plaintiff's action, so that the comparative responsibility provisions of our Product Liability Act (CPLA) prevent the application of this doctrine. Kyrtatas v. Stop ShopInc., 205 Conn. 694, 699 (1998), and its language is cited — the doctrine is not available when all potential defendants are before the court. Section 52-572(o) abrogates the prohibition of contribution among joint tortfeasors that is why indemnification is barred. Stefano v. Smith, 705 F. Sup. 733, 735 (1989) is cited for this rationale. Thus, Gracious Living argues the comparative responsibility provisions of the CPLA "eliminates the need for indemnification actions in the products liability context." Page 4 of brief.
But then came a case called Malerba v. Cessna Aircraft Co.,210 Conn. 189 (1989). In that case the plaintiff brought suit against Cessna and Cessna then was granted permission to and then filed a third party complaint against the owner and mechanic of the aircraft involved in the accident which caused the plaintiff his injuries. This complaint was in four counts and sought recovery based upon common law principles of indemnification and contribution. The plaintiff Malerba filed a motion to strike claiming no actions lied for indemnification and contribution in an action involving our product liability act which, under §52-572(o), requires apportionment of responsibility. The court, seemingly departing from the position it took in Kytatas, held CT Page 8401 that at least under certain circumstances an indemnification action can be pursued against the background of a statutory comparative liability action where the trier of the initial claim asserting injuries against the various defendants is required to apportion liability among the plaintiff and all the defendants.210 Conn. at pp. 196, et seq. The analytical basis of the court's decision is set forth on page 198 and is fairly sweeping as regards the issue involved. The court said the following:
 General Statutes § 52-572 (o)(c) provides: "In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party." An indemnitee, however, must prove "that the negligence with which it has been found chargeable was passive or secondary, while the indemnitor" has been negligent and in a manner which was active and primary. Kaplan v. Merberg Wrecking Corporation, supra, page 415. The principles are different and are articulated in a different manner. Thus, a finding that a given defendant was liable to the plaintiff does not necessarily determine whether that responsibility was based on a passive negligence which might, therefore, entitle that defendant to a full reimbursement from other defendants based upon indemnification principles.
The court makes a passing reference to Kyrtatas in footnote 9 on page 198 to the effect that its holding there "was specifically limited to its factual circumstances." But whatever that case's factual circumstances may be perceived to be, it is still true whether all prospective defendants are parties or not that, as said in Malerba, that a finding that a particular defendant was liable in a CPLA action does not necessarily determine whether that party's responsibility was based on passive negligence which might entitle it to full reimbursement from other defendants.
Perhaps the distinction between Kyrtatas and Malerba is really based on procedural considerations. In other words inKyrtatas all defendants were parties and the jury was asked to decide issues of comparative responsibility and indemnification by the mechanism of special interrogatories after a charge that presumably covered both matters. This could be a daunting task so perhaps the solution is bifurcation of the indemnity claim and CT Page 8402 the failure to do so may be the basis of the problem in Kyrtatas.
In any event Malerba seems to say that common law indemnification remains viable despite § 52-570 (o)(c) and its comparative responsibility rules.
That seems to be the only sensible result given the purposes of our product liability act. The act was passed to expedite the handling of the claims of consumers injured by defective products released into the stream of commerce by manufacturers and distributors of that product. Given that purpose and once the adjudication of such a consumer claim has been made what difference does it make for any of the purposes with which the product liability act is concerned that an indemnification claim must be sorted our between manufacturer and distributor of a defective product?
The legislature should not be presumed to have abrogated a long standing common law remedy unless it explicitly indicates that it is doing so. Besides it could be counterproductive to bar indemnification actions in this area of the law. Passive/active theories of negligence, enforced through indemnification, focus responsibility on the party primarily responsible for injuring the consumer by release of a defective product into the marketplace. In conformity with one of the principle aims in tort law this doctrine hopefully would pressure the party most responsible for injuring the consumer to take ameliorative steps or precautions especially in the manufacturing process to avoid the distribution of such products. Wholesalers and retailers of such products are much less likely to be able to ascertain what products they distribute are likely to present a danger to consumers. Apart from its relevance to the resolution of particular suits, application of the rules of common law indemnification with its active/passive theory of responsibility surely must reflect and enforce the policy of insurers who as a matter of rational risk allocation would impose higher premiums on manufacturers of defective products than wholesalers or retailers who are much less likely to be effective in preventing the distribution of defective products to the public. The imposition of such costs on the various parties in the chain of distribution of products is not only fairer but exerts beneficial pressure on prospectively liable parties to mend their ways. Why should courts make a rule of law abrogating common law indemnification that do not reflect market place and insurance cost realities. The motion to strike the first count asserting CT Page 8403 common law indemnification is denied.
 (2)
The defendant Gracious Living also moves to strike the second count which asserts an apportionment claim and references §52-572 (o). It argues that this count is "legally insufficient because a third party claim for apportionment may not be brought under the Connecticut Products Liability Act."
That is, all defendants are now parties to the plaintiff's action. The problem with the second count is not so much that it is legally insufficient but it is largely superfluous. The principles and policies behind § 52-572 (o) will apply to this action in any event and will be enforced by the trial judge through the mechanism of subsections (b) through (d) of that statute. The court will grant the motion to strike this count with this understanding; in other words the court agrees with Gracious Living that the provisions of § 52-572 (o) apply to this suit but concludes it is not necessary for Gracious Living to interject the claim under that statute into this case by means of the second count. After reviewing the transcript, however, it is clear to the court that counsel for Gracious Living focused his I argument on the indemnification claim. In light of this the court is willing to grant reargument on its ruling striking the second count and its attendant claims for relief if Gracious Living makes such a request.
In any event, the motion to strike the second count is granted for the reasons stated, the motion as to the first count is denied.
CORRADINO, J.