[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The sole issue to be considered on this motion to strike is whether the exclusivity provision[1] of the Connecticut Product Liability Act, sections 52-572m et seq. of the General Statutes, bars a defendant from seeking indemnification in this action against a third party not originally sued by the plaintiff.
Plaintiff Vincent Ives owns a gas station and garage in Washington, Connecticut. He claims that a socket he purchased from the defendant Michael Bowe broke and injured him. He also claims that the defendant NMTC, Inc., either manufactured the socket or distributed it to Bowe. The first count of the amended complaint dated March 25, 1999, is brought under the Product Liability Act and alleges that the socket was defective and unreasonably dangerous when sold. The second and third counts, seeking damages under Connecticut Unfair Trade Practices Act, sections 42-100a et seq. of the General Statutes ("CUTPA"), alleges that the socket was sold as a new tool when it was actually used.[2]
In February 1999 the defendant NMTC filed a third-party complaint seeking indemnification from the manufacturer of the socket, White Industrial Tool Inc. ("White")[3] White's motion to strike under consideration here claims that the exclusivity provision of the Product Liability Act bars indemnification claims brought under theories of active-passive negligence (second count of third-party complaint), breach of warranty of merchantability under General Statutes section 42a-2-314 (third count), and breach of warranty of fitness under General Statutes section 42a-2-315 (fourth count). White does not challenge the validity of the first count of the third-party complaint seeking indemnification under the Product Liability Act. For the reasons stated below, the court finds the issues in favor of the third-party plaintiff NMTC and denies the motion to strike.
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint CT Page 9719 most favorably to the plaintiff." (Internal quotation marks omitted.) Novametrix Medical Systems, Inc. v. BOC Group. Inc.,224 Conn. 210, 214-15, 618 A.2d 25 (1992). The court must consider the facts that are necessarily implied and fairly provable under the allegations. S.M.S. Textile Mills, Inc. v.Brown, Jacobson, Tillinghast, Lahan and King, P.C.,32 Conn. App. 786, 796 (1993), 631 A.2d 340, cert. denied, 228 Conn. 903,634 A.2d 296 (1993). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied."Id. In deciding a motion to strike the court shall consider only those grounds specified in the motion. Blancato v. FeldsparCorporation, 203 Conn. 34, 44, 522 A.2d 1235 (1987).
It is undoubtedly true that "our products liability statute, General Statutes 52-572n(a), provides the exclusive remedy for a claim falling within its scope, thereby denying a claimant the option of bringing common law causes of action for the same claim." Winslow v. Lewis-Shepard, Inc., 212 Conn. 462, 463,562 A.2d 517 (1989). That exclusivity, however, does not necessarily bar third-party claims seeking indemnification against those who are not yet parties to the action. In Malerba v. Cessna AircraftCo., 210 Conn. 189, 198-199, 554 A.2d 287 (1989), the court held that "common law indemnification continues as a viable cause of action in the context of product liability claims and . . . the comparative responsibility principles that serve as its foundation do not bar a later determination of liability as between an indemnitee and an indemnitor." That holding applies to all three counts which the third-party defendant White here seeks to strike.
The court in Malerba specifically permitted a product liability defendant to bring a third-party complaint alleging active-passive negligence; thus the third-party defendant White's motion here to strike the second count of the third-party complaint alleging active-passive negligence must fail. While the court in Malerba did not directly address the exclusivity issue, this court agrees with those lower court decisions that have readMalerba to permit third-party defendants for indemnification actions claiming active-passive negligence. See, e.g., TorringtonCountry Club v. Ply Gen, et al.), 1994 Ct. Sup. 6384, 6386, No. CV92 0061340 (Judicial District of Litchfield, June 21, 1994) (Pickett, J.): "[I]n Malerba v. Cessna Aircraft Co., . . ., our Supreme Court recognized that common law indemnification is a viable cause of action in the context of product liability claims for a CT Page 9720 third-party plaintiff where all potential defendants are not parties to the suit." (Citation omitted.) Even the case of Jordanv. Yankee Gas Service Company, 1997 WL 374966 (Conn.Super.Ct. June 26, 1997), cited by White in its memorandum in support of the motion to strike, permitted a product liability defendant to bring a third-party indemnification claim for active-passive negligence.[4]
Permitting indemnification claims for active-passive negligence in such actions is entirely logical and consistent with the purposes of the Product Liability Act, moreover. While a seller or distributor originally sued by a plaintiff may, by virtue of the Act's strict liability, be legally responsible to the plaintiff for damages caused by an unreasonably dangerous product, they may nonetheless have had no part in creating or allowing the defects that injured a plaintiff The law of strict liability has removed from consumers the burden of showing fault or negligence on the part of product sellers for sound policy reasons cited many times elsewhere by courts, legislatures, and commentators. As the court recognized in Malerba, there is no reason to prohibit such a "passively negligent" defendant from seeking reimbursement through indemnification from an "actively negligent" manufacturer who is wholly responsible for the defect that injured the plaintiff:
 An indemnitee, however, must prove "that the negligence with which it had been found chargeable was passive or secondary, while the indemnitor had been negligent and in a manner which was active and primary." . . . Thus, a finding that a given defendant was liable to the plaintiff does not necessarily determine whether that responsibility was based on a passive negligence which might, therefore, entitle that defendant to a full reimbursement from other defendants based upon indemnification principles.
Malerba v. Cessna Aircraft Co., 210 Conn. at 198. ("Internal citations omitted) Thus, the motion to strike the second count of the third-party complaint is denied.
A common law indemnification claim can be based not only on negligence, however, but also, as the court held in Burkert v.Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 75, 579 A.2d 26
(1990), on the "dishonor[ing[[of] a contractual provision," such as the breach of warranty that failed there for lack of proof. CT Page 9721 Similarly, a party ""is entitled to indemnification, in the absence of a contract to indemnity, only upon providing that the party against whom indemnification is sought either dishonored acontractual provision or engaged in some tortious conduct." Id.
(Emphasis added; citation omitted.) Furthermore, indemnification is an appropriate remedy for breach of an implied contractual obligation. Kaplan v. Merberg Wrecking Corp. , 152 Conn. 405, 411,207 A.2d 732 (1965).
The breach of warranty allegations in the third and fourth counts here are that the third-party defendant breached warranties of suitability and merchantability implied pursuant to the Uniform Commercial Code. This court's analysis of the motion to strike is the same for both counts. None of the cases cited by "White directly address the joint applicability of Malerba andBurkert to the present situation. While the court in Jordan v.Yankee Gas Service Co. did strike a breach of warranty count for indemnification based on the Product Liability Act's exclusivity provision, the court there did not consider the holding inBurkert. Since Malerba held that the legislature did not intend to abrogate common law claims for indemnification in product liability cases, this court agrees with those cases allowing such claims based on breach of warranty. See, for example, Gelorminov. J.C. Penney Co. Inc., 1997 Ct. Sup. 5654, No. CV 96 0067840 (Judicial District of Litchfleld, May 22, 1997) Dranginis);Olmstead v. Edwards Superstores, 1998 Ct. Sup. 8399, 8402, No. CV97 0058382S (July 7, 1998) (Corradino, J.).
The key to allowing such indemnification claims for breach of warranty lies in the exclusivity statute itself As the Supreme Court has held, "[t]he legislature clearly intended to make our products liability act an exclusive remedy for claims fallingwithin its scope." (Emphasis added.) Winslow v. Lewis-Shepard,Inc., 212 Conn. 462, 471, 562 A.2d 517 (1989). Claims by a defendant for indemnification against outside parties, based on their independent liability, not arising from the products liability act, to the defendant, would not appear to be "claims falling within [the] scope" of the act. "While the Product Liability Act "is the exclusive remedy for claims against product sellers. . . . it is intended only for claims falling within its scope. `. . . Claims arising outside the scope of the Act, however, may be asserted as common law actions or pursuant to alternative statutory provisions." Torrington Country Club v. PlyGen, et al.), supra. As the court stated in analogous circumstances in Olmstead v. Edwards Superstores, supra: CT Page 9722
 That seems to be the only sensible result given the purposes of our Product Liability Act. The act was passed to expedite the handling of the claims of consumers injured by defective products released into the stream of commerce by manufacturers and distributors of that product. Given that purpose and once the adjudication of such a consumer claim has been made what difference does it make for any of the purposes with which the Product Liability Act is concerned that an indemnification claim must be sorted our between manufacturer and distributor of a defective product?
The particular claims for breach of warranty here, for example, derive from Connecticut's adoption of the Uniform Commercial Code's warranties of merchantability and of suitability for a particular purpose. The two Code provisions relied on by NMTC here affect the relationship, rights and obligations between two commercial entities, manufacturer (White) and seller (NMTC). The Code represents a national effort to standardize the law of sales and commerce for manufacturers and merchants alike that we should not assume that the legislature has silently repealed. The purpose of the Product Liability Act, on the other hand, is to protect consumers and users of defective products who are injured by products that are unreasonably dangerous.
This court agrees those cases holding that breach of warranty claims for indemnification by a seller against a manufacturer do not fall under the Product Liability Act but are, rather, claims for commercial losses explicitly exempted by section 52-572n(c), which provides that:
 "As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by Title 42a, the Uniform Commercial Code."
See, e.g., Thiverge v. Fortress, 1993 Ct. Sup. 5809, 8 CSCR 712
(Judicial District of New London, June 14, 1993) (Teller, J.) (rejecting applicability of § 52-572n(a) because an indemnification claim for breach of warranty is a claim for commercial loss not governed by the Product Liability Act)[5]. CT Page 9723
As White points out, the term "commercial loss" has not yet been defined by our appellate courts; neither of the views of that term adopted by decisions in the Superior Court, however, compels a different decision here. Even the "narrower" definition of this term articulated by the court in American ManufacturersMutual Ins. Co. v. Harrington Hoists, Inc., 15 CLT 29, (Judicial District of New Haven, June 13, 1989) (Berdon, J.) would seem to include the lost profits that NMTC would incur should it incur liability to the plaintiff. That court's exclusion of claims between commercial parties for "property damage and personal injuries" applied only to claims made by the commercial entities themselves for such damages, not to a commercial party's claim that it might suffer consequential commercial loss because it had to pay a judgment awarded under the Product Liability Act for personal injuries suffered by a consumer.
White claims, however, that the prospect of future lost profits because of a possible judgment does not establish "commercial loss" and relies on the holding in Lopez v. GeneralMotors Corp. , 1993 Ct. Sup. 4792, No. CV-89-0287165, (Judicial District of New Haven, March 3, 1993). The court in Lopez
rejected an indemnification claim based on the UCC because "the mere expectation of future harm" from a possible judgment did not justify an indemnification claim the court there reasoned that "a claim for breach of implied warrant pursuant to § 42a-2-314
must allege some presently existing harm or past harm." InMalerba, however, the court rejected a similar argument that an action for contribution must await "the entry of a judgment against the joint tortfeasors and actual payment by one of them to the original claimant. . . ." The court there noted that:
 General Statutes 52-102a(a), which authorizes the impleading of third parties by a defendant in a civil action without such preconditions. This latter provision states in relevant part: "A defendant in any civil action may move the court for permission as a third-party plaintiff to serve a writ, summons and complaint upon a person not a party to the action who is or may be liable to him for all or part of the plains claim against him."
210 Conn. at 193-194 (emphasis added).
This court rejects third-party defendant White's argument CT Page 9724 that the defendant must choose between claiming indemnification either under the Product Liability Act or the Uniform Commercial Code. The courts have long allowed the pleading of claims, to the extent that they may be inconsistent, in the alternative. Any suggestion that defendant must file indemnification claims under the Uniform Commercial Code in a separate action because the exclusivity provisions of the Product Liability Act bar those claims here would ignore those considerations of judicial economy that call for trying these claims, having a common factual core, together. The motion to strike the third and fourth counts is, therefore, denied.
Accordingly, the motion to strike is denied.
STEPHEN F. FRAZZINI, JUDGE